No. 74,211

STEVE BRIGHAM, *Appellant*, v. DILLON COMPANIES, INC., *Appellee*.

(935 P.2d 1054)

Opinion filed April 18, 1997.

*Pamela G. Phalen*, of Spigarelli, McLane & Short, of Pittsburg, argued the cause, and *Fred Spigarelli*, of the same firm, was with her on the brief for appellant.

*Henry E. Couchman, Jr.*, of McAnany, Van Cleave & Phillips, P.A., of Kansas City, argued the cause, and *Douglas M. Greenwald* and *Frank D. Menghini*, of the same firm, were with him on the brief for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: Steve Brigham sued his employer, Dillon Companies, Inc., (Dillons) alleging that he was wrongfully demoted in retaliation for claiming workers compensation benefits. Concluding that Kansas courts do not recognize a cause of action for wrongful demotion, the district court entered summary judgment in favor of Dillons. Brigham appealed, and the Court of Appeals affirmed. *Brigham v. Dillon Companies, Inc.*, 22 Kan. App. 2d 717, 921 P.2d 837 (1996). Brigham's petition for review was granted by this court on September 25, 1996.

Material facts are not in dispute. Brigham has been employed by Dillons in its grocery stores since 1980. He began as a part-time carry-out person in Dillons' grocery store in Joplin, Missouri. He transferred to the store in Pittsburg, Kansas, in 1983 to become a

full-time shelf stocker. He became dairy manager of the Pittsburg store in 1985 and grocery manager in 1987.

Late in 1992, Brigham filed a claim for workers compensation for injuries and took time off from work to have surgery on his left arm. When he returned to work in February 1993, he was assigned to the position of frozen foods manager. The move from grocery manager to frozen foods manager was a demotion with a corresponding reduction in pay.

Brigham's amended petition contained two counts, one for the tort of retaliatory demotion and the other for breach of an implied employment contract. He waived his implied contract claim, and Dillons sought summary judgment on the ground that the courts of Kansas do not and will not recognize a cause of action for wrongful demotion. Dillons denied that Brigham's demotion was retaliatory and set out allegations in connection with its motion for summary judgment which, if shown, would establish lawful reasons for his demotion. Summary judgment, however, was not sought on that basis. The single issue considered by the district court, the Court of Appeals, and now this court is whether a cause of action for retaliatory demotion should be recognized.

This case is somewhat unusual in that it purports to be a summary judgment even though no matters outside the pleadings need to be considered. It is not uncommon for a motion to dismiss under K.S.A. 60-212(b)(6) to be treated as one for summary judgment and processed under K.S.A. 60-256, but it is less common for a motion challenging only the legal sufficiency of a claim to result in the entry of summary judgment. In this case, the district court actually treated Dillons' motion as a motion to dismiss, even though it used other labels. The district court accepted as true, for the purpose of deciding the motion, Brigham's allegations that he had been demoted in retaliation for exercising his rights under the Workers Compensation Act. Dillons' defense, based on its allegations that Brigham was demoted for good cause unrelated to his workers compensation claim, remains to be adjudicated if we recognize a cause of action for retaliatory demotion. On appeal, we must determine whether Brigham's "pleaded facts and inferences state a claim, not only on the theory which may be espoused by

the plaintiffs, but on any possible theory we can divine." *Noel v. Pizza Hut, Inc.*, 15 Kan. App. 2d 225, 231, 805 P.2d 1244, *rev. denied* 248 Kan. 996 (1991).

The once impervious principle of employment-at-will "has been gradually eroded in Kansas and in other states." *Ortega v. IBP, Inc.*, 255 Kan. 513, 516, 874 P.2d 1188 (1994). The erosion is a result of the appellate courts of this state recognizing exceptions where the employee is discharged "in contravention of public policy." 255 Kan. at 518. Development of the exceptions was traced in *Ortega*. In *Murphy v. City of Topeka*, 6 Kan. App. 2d 488, 630 P.2d 186 (1981), the Court of Appeals recognized the tort of retaliatory discharge in an action involving discharge of an employee in retaliation for filing a workers compensation claim. In *Coleman v. Safeway Stores, Inc.*, 242 Kan. 804, 752 P.2d 645 (1988), this court prohibited an employer from firing an employee for being absent from work due to a work-related injury, even where the employee had not yet filed a workers compensation claim. In addition, in *Coleman* the court applied the tort of retaliatory discharge to employees covered by a collective bargaining agreement as well as to at-will employees. 242 Kan. 804, Syl. ¶ 4. This court's decision in *Palmer v. Brown*, 242 Kan. 893, 752 P.2d 685 (1988), recognized a cause of action for termination for whistle-blowing— the good faith reporting of serious infractions of rules, regulations, or the law pertaining to public health, safety, and welfare.

In the present case, the Court of Appeals observed that each of these cases "dealt with employee discharges" and that none involves employer action which falls short of termination. 22 Kan. App. 2d at 720. It viewed Kansas Supreme Court decisions as restricting public policy exceptions to the employment-at-will doctrine to terminations, either for filing a workers compensation claim or for whistle-blowing, and as lacking any suggestion that termination is not an essential element of an actionable claim. Declaring itself to be "duty bound to follow the law as established by our Supreme Court decisions, absent some indication that the Supreme Court is departing from its previously expressed position," 22 Kan. App. 2d at 719, the Court of Appeals rejected Brigham's argument that the tort of retaliatory discharge logically and nec-

essarily encompasses retaliatory demotion. The Court of Appeals found no merit in Brigham's contention that the public policy rationale for previous cases, in particular *Murphy*, requires that employees be protected from coercive conduct by employers, even if that conduct falls short of termination. It concluded its opinion on a strong cautionary note by quoting a federal court's warning of open floodgates, unforeseen and unwarranted results, and difficulty in drawing the line:

" 'Recognizing a retaliation tort for actions short of termination could subject employers to torrents of unwarranted and vexatious suits filed by disgruntled employees at every juncture in the employment process. And why stop at demotions? If, as [the plaintiff] argues, a demotion raises the same policy concerns as a termination, so too would transfers, alterations in job duties, and perhaps even disciplinary proceedings. The potential for expansion of this type of litigation is enormous.' *Ludwig v. C & A Wallcoverings, Inc.*, 960 F.2d 40, 43 (7th Cir. 1992) . . . ." 22 Kan. App. 2d at 720.

Since the federal court predicted in *Ludwig v. C & A Wallcoverings, Inc.*, 960 F.2d 40, 43 (7th Cir. 1992), that Illinois state courts would not recognize a cause of action for retaliatory demotion, the Illinois Supreme Court has fulfilled the prophecy. *Zimmerman v. Buchheit of Sparta*, 164 Ill. 2d 29, 645 N.E.2d 877 (1994), *reh. denied* January 30, 1995. The Illinois plaintiff, Linda Zimmerman, was an at-will employee who sued her employer for demoting and discriminating against her for asserting her rights under the workers compensation act. The trial court granted her employer's motion to dismiss for failure to state a cause of action, and the Illinois Appellate Court reversed and remanded. *Zimmerman v. Buchheit of Sparta, Inc.*, 245 Ill. App. 3d 679, 615 N.E.2d 791 (1993). Zimmerman built her argument on *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 384 N.E.2d 353 (1978), in which the Illinois court recognized a cause of action for retaliatory discharge, thus creating a limitation on an employer's license to discharge employees for any reason or no reason. Zimmerman argued that the "essential doctrine" of *Kelsay* could not be implemented without " 'some comparable doctrine, to protect employees from other distinct measures of retaliation, short of an actual discharge.' " 164 Ill.

2d at 32. The Supreme Court viewed the "essential doctrine" of *Kelsay* in the following light:

"Without a remedy for retaliatory discharge, employees would be placed in the position of 'choosing between their jobs and seeking their remedies under the [Workers' Compensation] Act.' (*Kelsay*, 74 Ill. 2d at 184.) Therefore, to uphold and implement the fundamental purpose and public policy behind the Act, the *Kelsay* court determined it was necessary to recognize a cause of action for retaliatory discharge. *Kelsay*, 74 Ill. 2d at 181." 164 Ill. 2d at 33.

The intermediate court had concluded that § 4(h) of the Illinois Workers' Compensation Act prohibited the activities alleged by Zimmerman—that she had been demoted because she asserted her rights under the workers compensation statute. *Zimmerman*, 245 Ill. App. 3d at 683. The intermediate court stated:

"Plaintiff has suffered a loss of income and employment, but not a termination of her employment. We see little difference between retaliation by loss of employment by termination and retaliation by reduction in hours and demotion. If the allegations of the complaint are true, the defendant clearly 'discriminated' against the plaintiff in violation of the proscription against such conduct contained in section 4(h) of the Workers' Compensation Act.

"Under these circumstances, a cause of action could lie to ensure that the public policy behind the enactment of the Workers' Compensation Act is not frustrated. It would be a bitter irony if employers were allowed to circumvent the public policy recognized by the supreme court in *Kelsay* and adopted by the legislature by section 4(h) by performing retaliatory and 'discriminatory' actions short of termination. Public policy will not allow employers to frustrate an employee's rights under the Workers' Compensation Act and to avoid statutorily imposed duties by retaining the employee but demoting or reducing the employee's hours." 245 Ill. App. 3d at 683.

The first paragraph of § 4(h) prohibits discrimination against an employee because he or she exercised workers compensation rights. The second paragraph prohibits an employer from discharging an employee because he or she exercised workers compensation rights. A bare plurality of the Illinois Supreme Court disagreed that its reasons for implying a cause of action pursuant to the second paragraph of § 4(h) applied as well to implying a cause of action under the first paragraph. 164 Ill. 2d at 43-44. The court stated:

"The motivating factor in *Kelsay* for creating an independent tort action for retaliatory discharge was the express corporate policy of the employer in that case to discharge employees who filed workers' compensation claims; allowing the con-

tinuation of such a policy would frustrate the strong public policy expressed in the Act—the prompt compensation of employees for their injuries. In the instant case, plaintiff fails to explain the manner in which demotions, as distinct from terminations, relieve employers of their responsibility to compensate employees for their work-related injuries." 164 Ill. 2d at 44.

Four of the seven justices did not agree that retaliatory termination could be distinguished from retaliatory demotion in this way. Two concurring justices, who agreed with the plurality's conclusion that a cause of action for retaliatory demotion should not be implied pursuant to § 4(h), agreed with the dissenters that recognition of a cause of action for retaliatory demotion was a logical and necessary extension of *Kelsay*:

"The plurality's reasoning is flawed because, if we do not have a cause of action for retaliatory demotion, we, in effect, will not have a cause of action for retaliatory discharge. We have invited those who wish to discharge in retaliation to simply demote in retaliation, and thereby escape the effect of the law. This glaring loophole will create more problems than it solves." 164 Ill. 2d at 46 (Bilandic, C.J., concurring).

The solution proposed by the concurring justices was to overrule *Kelsay* and abolish the tort of retaliatory discharge.

The solution proposed by the dissenting justices was to extend *Kelsay*. They viewed the paragraphs of § 4(h) as having a common purpose:

"Under the statute, these parallel provisions are of equal force. Accordingly, if the prohibition against discharge evinces a public policy whose violation can only be redressed through a civil action for damages, and we have clearly held that it does (*Kelsay*, 74 Ill. 2d at 185), how can we reach a different conclusion with respect to the prohibition against discrimination, which is the basis for Zimmerman's claim here? There is no principled way to distinguish the two situations. The 'comprehensive scheme' enacted by the legislature 'to provide for efficient and expeditious remedies for injured employees' (*Kelsay*, 74 Ill. 2d at 182) would be no less undermined if employers were permitted to discriminate against employees for seeking compensation under the Act than it would be if they were permitted to discharge such employees." 164 Ill. 2d at 52 (Harrison, J., dissenting).

Hence, four of the seven justices of the Illinois Supreme Court believed that it would be inconsistent to retain the tort of retaliatory discharge without recognizing a cause of action for retaliatory demotion. We agree.

In California, the Supreme Court held that courts may enforce an implied employment contract limiting the employer's right to demote an employee without good cause. *Scott v. Pacific Gas & Electric Co.*, 11 Cal. 4th 454, 46 Cal. Rptr. 2d 427, 904 P.2d 834 (1995). The plaintiffs were long-term supervisory employees of the defendant utility who were suspended and demoted due to an auditor's advising the employer of a possible conflict of interest created by the plaintiffs' outside engineering consulting business. Factual findings were made by the jury that there was an implied contract between the utility and the employees not to demote without good cause and that it had been breached by the employer's demoting the employees.

The California Supreme Court addressed and rejected policy arguments advanced by the employer "why contractual agreements that limit an employer's ability to demote at will should not be enforced." 11 Cal. 4th at 466. The concern for the opened floodgates and other dire consequences expressed by the Court of Appeals in the present case and predicted by the utility in the *Scott* case were viewed as "highly dubious" by the California court, expressing the belief that courts could enforce implied contractual prohibitions of wrongful demotion without becoming "embroiled in numerous lawsuits over trivial employment matters." 11 Cal. 4th at 472. What the utility overlooked, according to the court, were

"traditional principles of contract law provid[ing] both employers and courts with a number of tools for preventing such judicial overinvolvement in the employment relationship. First, and fundamentally, employers have the capacity to alter their policies and practices so as not to create unwanted contractual obligations. . . .

"Second, . . . the doctrine of unenforceability of indefinite promises will likely eliminate many employment contract claims that would involve courts in the micromanagement of the workplace. . . .

"Finally, we find implausible PG&E'S claim that employees will bring their employers to court over the more minor matters that PG&E predicts—such as changes in work rules, reprimands or other intermediary forms of discipline—for the simple reason that in such cases, even if the promises are sufficiently definite to permit enforcement, courts will be unable to grant any significant relief. An employer's alleged violation of these minor contract terms will likely not give rise to ascertainable damages. . . .

"It is also well established that an employee is generally not entitled to compel the specific performance of the terms of an employment contract, absent statutory

authorization. [Citations omitted.] Accordingly, we doubt that the floodgates of litigation will be opened by employees seeking to sue their employers for recovery of, at most, nominal damages. Such actions would be counterproductive to future employment relations.

"In sum, we do not accept PG&E's contention that implied employment contract terms outside the realm of wrongful termination should not be enforced in order to prevent courts and juries from intruding too far into the workplace. The employer's ability to control the terms of the employment contract, as well as the application of traditional contract doctrines regarding indefinite contract terms, speculative damages, and the limitation on equitable remedies, are sufficient to prevent such excessive judicial entanglement. But when, as here, there is substantial factual evidence of the existence of a contract not to demote without good cause, breach of that contract, and significant, ascertainable pecuniary loss as a result, there is no reason for courts to refrain from awarding damages." 11 Cal. 4th at 472-74.

Although the present case is not based upon an implied contract for employment, the above comments of the California Supreme Court are, for the most part, applicable. The linchpin of the tort for retaliatory demotion is a violation of public policy. As such, the cause of action is strictly limited and would likewise prevent "excessive judicial entanglement." In *Brown v. United Methodist Homes for the Aged*, 249 Kan. 124, 134, 815 P.2d 72 (1991), this court noted:

"The employment-at-will doctrine is not strictly adhered to when the employer's conduct undermines an important public policy. Both federal and state legislation have restricted the employer's ability to terminate a worker arbitrarily and, although no court has entirely abolished the employment-at-will doctrine, recent cases indicate a trend to avoid the injustice of the rule. Along this line, some state courts have recognized causes of action based upon the theories of wrongful discharge, violation of public policy, and breach of contract."

Specifically addressing termination of employment for filing a workers compensation claim, the Court of Appeals, in *Murphy*, said:

"We believe the public policy argument has merit. The Workmen's Compensation Act provides efficient remedies and protection for employees, and is designed to promote the welfare of the people in this state. It is the exclusive remedy afforded the injured employee, regardless of the nature of the employer's negligence. To allow an employer to coerce employees in the free exercise of their rights under the act would substantially subvert the purpose of the act." 6 Kan. App. 2d at 495-96.

The employers' violation of public policy and the resulting coercive effect on the employee is the same in both situations. The loss or damage to the demoted employee differs in degree only. We do not share the employers' concern that a torrent of litigation of insubstantial employment matters would follow in the wake of our recognition of a cause of action for retaliatory demotion and, even if we did, it does not constitute a valid reason for denying recognition of an otherwise justified cause of action.

We conclude that the recognition of a cause of action for retaliatory demotion is a necessary and logical extension of the cause of action for retaliatory discharge. To conclude otherwise would be to repudiate this court's recognition of a cause of action for retaliatory discharge. The obvious message would be for employers to demote rather than discharge employees in retaliation for filing a workers compensation claim or whistleblowing. Thus, employers could negate this court's decisions recognizing wrongful or retaliatory discharge by taking actions falling short of actual discharge.

The judgment of the Court of Appeals affirming the district court is reversed. The judgment of the district court is reversed, and the case is remanded for further proceedings consistent with this opinion.