Doyle PATTON, Plaintiff,

v.

AFG INDUSTRIES, INC., Defendant.

Civil Action No. 98–2569–CM.

United States District Court,
D. Kansas.

March 29, 2000.

Patrick E. McGrath, Chris R. Pace, Glenn S. Grayson, Wallace, Saunders, Austin, Brown & Enochs, Chartered, Overland Park, KS, for AFG Industries Inc., a Delaware Corp., defendant.

## MEMORANDUM AND ORDER

MURGUIA, District Judge.

This matter is before the court on defendant's, AFG Industries, Inc. (AFG), motion for summary judgment. (Doc. 32). For the reasons explained herein, the motion is granted in part.

### FACTS

Plaintiff, Doyle Patton (Patton), began working as a cold-end technician at the AFG glass manufacturing facility in February 1992. One of Mr. Patton's duties as a cold-end technician was to remove glass panes from a conveyor belt and pack them in crates. This duty occupies approximately fifty percent of a cold-end technician's time.[1] Other duties include inspecting packages, closing packages, driving a forklift, and clean-up.

In late 1996, Mr. Patton began experiencing pain while making the pinching and grasping motions required to hold the glass while lifting and reaching out to place it in crates. In January 1997, he reported this pain in the company's injury log and was referred to a physician. He was diagnosed with bilateral tennis elbow, restricted from repetitive movements or lifting over 20 pounds, and placed on light duty. He was assigned mainly to closing inspections and driving the forklift. After being placed on light duty, Mr. Patton was asked on several occasions to pack glass for a few hours a day despite the restric-

Rebecca M. Oland, Law Offices of Rebecca M. Oland, Lenexa, KS, for Doyle Patton, plaintiff.

---

1. Mr. Patton appears to deny that this duty occupied "at least 50 % of the work required" by the position, (Pl.'s Mem. in Opp'n at ¶ 5), but in argument his counsel noted "Patton's admission that a cold end technician typically spent approximately fifty percent of his shift on this job." (*Id.* at 35). In his deposition, Mr. Patton agreed that at least fifty percent of a cold-end technician's day is spent packing glass. (Depos. of Patton, p. 49, l. 22–p. 50, l. 4).

tion from repetitive movements. When he complained of pain, AFG no longer required this.

Mr. Patton was subjected to derogatory verbal taunts by fellow employees for not working full duty. At one point he found a cartoon on a company bulletin board which made fun of his disability. AFG was aware of this conduct. The AFG plant manager, Jamie Culbertson, began receiving complaints from employees about Mr. Patton's light duty assignment.

On the morning of August 15, 1997 Mr. Patton discovered a banner which read, "Dr. Do Little's L.D. Work Station." Mr. Patton told his supervisor, who laughed about it. Later in the day, Mr. Patton was suspended without pay by Mr. Culbertson who commented that Mr. Patton was costing AFG "big bucks." Mr. Patton believed that it was only a matter of time before he would be allowed back to work. He was given a list of requirements to complete, including a work release, before he would be allowed to return. In the afternoon of August 15,[2] counsel for Mr. Patton faxed a letter to AFG formally requesting reasonable accommodations for his disability. The accommodations included continuing his light duty assignments and not requiring him to pack glass.

Mr. Patton received a work release on August 18, and called AFG to determine if he could return to work on the twentieth.

He was told that someone would get back to him. On August 19, AFG notified Mr. Patton that he would not be allowed to work until further notice because of the letter his attorney sent on August 15. Mr. Patton understood that he continued in suspension, and believed AFG was still considering his return. Mr. Culbertson left the final return decision to legal counsel and the corporate human resources department. Mr. Patton began to work at another company on October 9, 1997.

In November 1997, Mr. Patton called Mr. Culbertson about his continued suspension. Mr. Culbertson said if Mr. Patton dropped his workers compensation claim, he could return.[3] Mr. Patton called again to confirm this alleged blackmail and recorded the second conversation with Mr. Culbertson.

Mr. Patton might argue that the conversations referred to a "disability claim" pursuant to the Americans with Disabilities Act (ADA), separate from his worker's compensation claim. In the transcribed conversation, Mr. Patton referred to the claim as his "disability claim." (Pl.'s Mem. in Opp'n, ¶ 58, at 19–20 & Ex. A–4). He implies in his argument that the reference is to a claim pursuant to the ADA. (Id. at 25–26). Even if the subject of the conversations were not deemed admitted, the court would not infer a separate "disability claim."

---

2. The sequence of events on August 15, 1997 is not clear. There is no evidence of the time Mr. Patton reported to work on that day. His affidavit states that he was told to meet with Mr. Culbertson "[o]n the morning of August 15, 1997." (Pl.'s Mem. in Opp'n, Ex. A, ¶ 13). The facsimile caption from plaintiff's letter indicates it was sent at 1:40 p.m. on August 15, 1997. (Id., Ex. A–3). Mr. Patton does not argue that he was suspended on August 15 in retaliation for the letter sent on August 15, therefore, the court concludes that the suspension occurred before the letter was received.

3. AFG refers to the claim in its statement of uncontroverted facts as a workers compen-

sation claim. In his response to AFG's statement of uncontroverted facts, Mr. Patton denies only the characterization of the conversation as an attempt to coerce Mr. Culbertson. He does not deny that the conversation concerned the workers compensation claim. Therefore, that fact is deemed admitted for purposes of summary judgment. See D.Kan.Rule 56.1. AFG does not deny Mr. Patton's additional statement of fact that Mr. Culbertson told him if he dropped his claim he could return to work. Compare Def.'s Mem. for Summ.J. ¶¶ 33, 34 at 7; and Def.'s Reply at 1; with Pl.'s Mem. in Opp'n ¶¶ 33, 34 at 8 and ¶ 58 at 19–20.

Neither Mr. Patton's EEOC charges nor this action had been filed before the conversations took place. In his complaint, Mr. Patton calls the subject of the conversations a "worker's compensation claim." (Complaint, ¶ 11). AFG refers to a workers compensation claim in its statement of facts. In the transcribed conversation, Mr. Culbertson referred to Mr. Patton's workers compensation claim:

> But the disability part of it is something that's more the worker's comp and the terminologys (sic) that's used there. We're not wanting to accept or agree that you have a disability at this point. I think all we're wanting to say is that you have an impairment at this point.

(Pl.'s Mot. in Opp'n, Ex. A–4).

■ The only ADA claim to which the conversations might refer would be the request for accommodation and non-retaliation in Mr. Patton's letter of August 15. However, in the conversation there is no reference to accommodations, retaliation, or the August 15 letter. Furthermore, although a request for accommodation is a protected activity which implies an assertion of disability, the **request alone** is **not** a "disability claim" pursuant to the ADA. *Cf. Craft v. Yellow Freight System, Inc.,* 1998 WL 72783 at *3 (10th Cir.1998) (refusal of a request for reinstatement, alone, is not retaliation). The court holds that no rational fact-finder could find the subject of the conversations was anything other than Mr. Patton's worker's compensation claim. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (the evidence "is so one-sided that one party must prevail as a matter of law").

AFG told Mr. Patton, in a letter dated December 19, 1997, he would remain on suspension until a final decision was made on his worker's compensation claim. Mr. Patton has never been fired, nor asked to return to work. On July 10, 1998 Mr. Patton filed charges of discrimination and retaliation with the Equal Employment Opportunity Commission (EEOC). He subsequently filed this action on December 11, 1998.

**SUMMARY JUDGMENT STANDARDS**

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670–71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505;

*see Adler,* 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler,* 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

## DISCUSSION

AFG argues numerous reasons to grant summary judgment on Mr. Patton's claims. It argues Mr. Patton cannot meet the administrative exhaustion requirement of the ADA because his EEOC claim was untimely filed. It also argues the ADA does not apply to this action because Mr. Patton; (1) cannot show that he is disabled as defined by the act, (2) cannot perform the essential functions of his former job, (3) cannot show that AFG's stated nondiscriminatory reasons for suspending him are a pretext under the *McDonnell Douglas*[4] burden-shifting framework, (4) cannot show a prima facie case of disability retaliation under the *McDonnell Douglas* burden-shifting framework, and, (5) cannot show a prima facie case of workers compensation retaliation under the *McDonnell Douglas* burden-shifting framework. Because the court finds that Mr. Patton's claims under the ADA were not timely filed with the EEOC, it dismisses those claims. It lacks jurisdiction to address the

4. *McDonnell Douglas Corp. v. Green,* 411 U.S.

substantive ADA issues raised. It will consider retaining jurisdiction over the supplemental state claim—workers compensation retaliation.

## A. Administrative Exhaustion of Claims Before the EEOC

### 1. Legal Standards

The ADA requires that all claimants exhaust their administrative remedies by filing a charge with the EEOC. 42 U.S.C. § 12117(a). Because Kansas is a so-called "deferral state," a charge of discrimination or retaliation must be filed within three hundred days after the alleged unlawful practice or act of retaliation occurs. *See* 42 U.S.C. § 2000e–5(e); *Mascheroni v. Board of Regents of Univ. of Cal.,* 28 F.3d 1554, 1557 n. 3 (10th Cir.1994); *Kidwell v. Board of County Comm'rs,* 40 F.Supp.2d 1201, 1214–15 (D.Kan.1998). Failure to exhaust administrative remedies is a jurisdictional requirement in the Tenth Circuit; without exhaustion, the court may not exert jurisdiction over the claims. *See Jones v. Runyon,* 91 F.3d 1398, 1399–1400 & n. 1 (10th Cir.1996).

█ Acts occurring before the statutory period may be considered if they are sufficiently related to at least one allegedly discriminatory act occurring within the period, and if all the acts constitute a continuing pattern of discrimination. *See Bullington v. United Air Lines, Inc.,* 186 F.3d 1301, 1310 (10th Cir.1999). The Tenth Circuit has described the relationship:

> The continuing violation doctrine allows [an ADA] plaintiff to challenge conduct that occurred outside the statutory time period if such conduct was "sufficiently related and thereby constitute[d] a continuing pattern of discrimination." "Mere continuity of employment, without more, is insufficient. . . ." Although

792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

the act occurring within the statutory period need not violate [the ADA] when viewed alone, the plaintiff cannot merely allege the continuing effects of prior acts; rather, [he] must show that events inside and outside the statutory period share commonality and are related acts of discrimination. In determining whether a plaintiff has made such a showing, we consider: "(i) subject matter—whether the violations constitute the same type of discrimination; (ii) frequency; and (iii) permanence—whether the nature of the violations should trigger an employee's awareness of the need to assert [his] rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate."

*Robbins v. Jefferson County Sch. Dist.*, 186 F.3d 1253, 1257–58 (10th Cir.1999) (citations omitted). The premise of the continuing violation doctrine is the equitable notion that a statute of limitations should not begin to run until a reasonable person would, or should, be aware that his rights were violated. Therefore, a continuing violation is not likely to be found where a plaintiff knew, or should have known through the exercise of reasonable diligence, that he was being discriminated against. *See Bullington*, 186 F.3d at 1311.

AFG argues the last act of discrimination occurred on August 19, 1997 when Mr. Patton was informed that he would not be allowed to return to work because of his attorney's letter. This act, and all earlier acts, occurred more than three hundred days before Mr. Patton filed his EEOC complaint. Therefore, this action must be dismissed with prejudice because the EEOC complaint was untimely. It further argues that the November 1997 conversations with Mr. Culbertson and the December 1997 letter from AFG cannot constitute a continuing pattern because they represent only continuing effects of the earlier alleged discrimination, (Def.'s Mem.

for Summ.J. at 9–10), not "fresh act[s] of discrimination." (Def.'s Reply at 2). Mr. Patton responds that the earlier acts may be included under the continuing violation doctrine because the November 1997 conversations and the December 1997 letter are acts which occurred within the statutory period and all the acts constitute a continuing pattern of disability discrimination.

### 2. Application

Sept. 13, 1997 is three hundred days before Mr. Patton filed EEOC charges, July 10, 1998. Prior-occurring events may only be considered in support of Mr. Patton's ADA claims if there was a continuing violation. Because the court finds no continuing pattern of discrimination, and no acts alleged within the statutory period which constitute distinct violations of the ADA, it holds that Mr. Patton's EEOC charge was not timely filed. Counts I and II of his complaint are dismissed with prejudice.

■ Mr. Patton points to his November 1997 conversations with Mr. Culbertson and the December 1997 letter from AFG as discriminatory acts occurring within the statutory period. Both acts fail the test of a continuing pattern of discrimination. First, they do not share the subject matter of the earlier discrimination alleged under the ADA. Mr. Patton alleged that he was suspended, harassed by his fellow employees, and not provided accommodations for his alleged disability, in violation of the ADA. In November 1997, he was told he could return if he dropped his **workers compensation claim.** In December 1997, he received notice that he would remain on suspension until a final decision was made on his **workers compensation claim.** While the two alleged acts may be unlawful under Kansas law, they are not violations of the ADA. With reference to Mr. Patton's alleged disability, the acts are

merely a continuation of AFG's decision to suspend him because of his disability.

Secondly, Mr. Patton does not present evidence to establish frequency of the alleged discriminatory acts—except to note that they occurred, without providing dates. The phone calls in November 1997 were initiated by Mr. Patton and, therefore, give no indication of the frequency of AFG's alleged acts of discrimination. The letter in December 1997, although including comments which a jury might find showed retaliatory intent as to Mr. Patton's workers compensation claim, primarily was a notice to Mr. Patton that his medical benefits were being continued, and informing him of procedures necessary to effect changes in coverage. It is at most, slight evidence of frequency of discrimination.

■ Finally, Mr. Patton should have known the discriminatory effect of the alleged acts was permanent by August 19, 1997, when he was informed that he could not return to work until further notice because of his attorney's letter of August 15. Mr. Patton argues that he was suspended, not fired, and he believed that his suspension would be of a short, but undefined duration. He argues the term "suspension" was used to keep him from realizing that he was being discriminated against, and to lull him into a false sense of security. AFG hoped that the statutory period would run before he filed charges with the EEOC. He notes that AFG employees were not generally suspended for more than a week.

The suspension occurred August 15. If the ADA was violated by the suspension, it occurred at that time. Later decisions not to lift the suspension were just a continuation of that suspension. Mr. Patton might argue that he had requested accommodations and non-retaliation from his employer, and could not be aware his rights were violated until AFG responded to the request. On August 19 AFG responded that his suspension would not cease on August 20 **because of** his August 15 request for accommodations and non-retaliation. Mr. Patton was suspended. His request for accommodations and non-retaliation was denied. By August 19, Mr. Patton knew, or should have known that a violation had occurred.

Both parties admit Mr. Patton is still on suspension and has never been fired. Had Mr. Patton been fired, or had he alleged constructive discharge during the statutory period or later, he might be able to argue that the change in status was a discriminatory act requiring all acts to be viewed as continuing violations. That is not the case here. The discrimination occurred, if at all, on August 15, 1997 or earlier. Mr. Patton should have been aware that his rights had been violated no later that August 19, 1997. The acts of November and December 1997 may support allegations of retaliation for filing a workers compensation claim, but they did not have any effect on his status as it relates to his alleged disability. AFG continued the suspension in accordance with the decision made in August.

Mr. Patton's charges were not timely filed with the EEOC. Therefore, the court has no jurisdiction over Mr. Patton's claims under the ADA and must dismiss those claims—Counts I and II of Mr. Patton's complaint—with prejudice. As a consequence of the dismissal of Counts I and II, the court is lacking federal question jurisdiction over any claims in this action. The court must determine whether it may—or should—exercise continuing jurisdiction over Mr. Patton's remaining state claim.

### B. Exercise of Continuing Jurisdiction Over State Law Claim

In an action over which it has federal question jurisdiction, a federal court may

exercise supplemental[5] jurisdiction over state law claims which form part of the same case or controversy. *See* 28 U.S.C. § 1367(a). The court **may** decline to exercise supplemental jurisdiction over a state law claim when it has dismissed all claims over which it has original jurisdiction. *See id.* § 1367(c)(3). The Tenth Circuit, before section 1367 was enacted, discussed pendant jurisdiction, and noted several factors to be considered by a court in deciding whether to retain jurisdiction over remaining state claims. *See Thatcher Enterprises v. Cache County Corp.,* 902 F.2d 1472, 1478 (10th Cir.1990). Generally the court will dismiss such claims, but may exercise its discretion to try the claims in cases where "given the nature and extent of pretrial proceedings, judicial economy, convenience, and fairness would be served by retaining jurisdiction." *Id.; cf. Smith v. City of Enid,* 149 F.3d 1151, 1156 (10th Cir.1998).

■ In this case, pre-trial activity is substantially complete. Discovery was to be complete by October 15, 1999. Final witness and exhibit lists were to be filed Sept. 15, 1999. Pretrial disclosures were to be made before Feb. 1, 2000. Dispositive motion deadline was December 1, 1999. All that remains is a pre-trial conference and trial. Were the court to dismiss Mr. Patton's state law claim at this stage, it would involve considerable burden. Mr. Patton would have to file a new action in state court. This court could order, as a condition of dismissal, that all discovery be used in the state court trial, and perhaps no further discovery would be allowed. However, trial would likely be delayed in state court. In these circumstances, the court finds that judicial economy, convenience and fairness would be served by retaining jurisdiction. Count III, the state law claim of Mr. Patton's complaint, will not be dismissed.

**5.** Called "pendant jurisdiction" before the passage of 28 U.S.C. § 1367. *See United Mine Workers of America v. Gibbs,* 383 U.S.

### C. Workers Compensation Retaliation

■ Kansas law addresses retaliatory discharge claims using the *McDonnell Douglas* burden-shifting framework. *Ortega v. IBP, Inc.,* 255 Kan. 513, 518, 526, 874 P.2d 1188 (1994). Although both parties admit that Mr. Patton has not been fired, but remains suspended, the court believes a claim has been stated under Kansas law. In *Brigham v. Dillon Companies, Inc.,* 262 Kan. 12, 935 P.2d 1054 (1997), the Kansas Supreme Court recognized a cause of action for retaliatory demotion as a logical and necessary extension of a cause of action for retaliatory discharge. *See Brigham,* 262 Kan. at 20, 935 P.2d 1054. The court reasoned this was necessary to prevent an employer from gaining the benefits of retaliation while avoiding its consequences by demoting the employee rather than firing him. *Id.* Suspending an employee without pay is directly analogous to retaliatory discharge in its effect, and more injurious to the employee than a demotion. Kansas law recognizes a claim in the circumstances of this case.

■ As AFG recognized in its memorandum, there are four elements to establish a prima facie case of retaliatory suspension: (1) the employee filed a workers compensation claim; (2) the employer had knowledge of the claim (3) the employer suspended the employee without pay; and, (4) there is a causal connection between the workers compensation claim and the suspension. *See Spradley v. Custom Campers, Inc.,* 68 F.Supp.2d 1225, 1235 (D.Kan.1999); *cf. Ortega,* 255 Kan. at 526, 874 P.2d 1188. AFG admits Mr. Patton can establish the first three elements, but argues that he cannot establish the fourth element. Alternatively it argues that Mr. Patton has not provided evidence which might show that the reasons AFG has

715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *cf. Daniels v. Board of Trustees of Herington Mun. Hosp.,* 841 F.Supp. 363, 367 (D.Kan.1993).

given for his suspension were pretext. Mr. Patton responds that he must only produce evidence that retaliation motivated AFG's actions, not that it was the sole motivation for the actions. *Brown v. United Methodist Homes for the Aged,* 249 Kan. 124, 147, 815 P.2d 72 (1991). He asserts that the uncontroverted facts are evidence of a causal connection between his suspension and his workers compensation claim.

 There is considerable controversy over the meaning and effect of the November 1997 conversations between Mr. Culbertson and Mr. Patton. If the jury believes Mr. Patton's version, it may infer a retaliatory intent on the part of Mr. Culbertson as the decision-maker for AFG. That inference would establish a causal connection between Mr. Patton's workers compensation claim and AFG's decision to continue his suspension. Additional evidence from which a jury could infer retaliatory intent is AFG's December 19, 1997 letter. AFG correctly asserts the lapse of time between the workers compensation claim and the alleged retaliation does not support an inference of causation. However, the evidence adduced concerning the conversations and the letter directly relates to the intent of Mr. Culbertson and AFG, and supports causation without an inference from temporal proximity. Mr. Patton has made a prima facie case of retaliatory suspension

AFG's argument that Mr. Patton cannot show its stated reasons are pretext is rejected. In order to defeat summary judgment, Mr. Patton must only present admissible evidence from which a rational jury could infer that the proffered non-discriminatory reasons are pretext, or that retaliation for asserting a workers compensations claim is one of multiple reasons. If the jury believes Mr. Patton's explanation of the November conversations, the December letter, and the other evidence, it could find that retaliation for asserting a workers compensation claim was a motivation for his suspension despite other alleged reasons.

**IT IS THEREFORE ORDERED** that AFG's motion for summary judgment (Doc. 32) is granted in part, and denied in part. Counts I and II of Mr. Patton's complaint alleging violation of the ADA are dismissed with prejudice. The court retains supplemental jurisdiction over Mr. Patton's retaliatory suspension claim in Count III of the complaint, and denies AFG's motion for summary judgment as it relates to that claim.