**Rosa GARCIA, Appellant,**

v.

**LEVI STRAUSS & CO., Appellee.**

**No. 08–01–00317–CV.**

Court of Appeals of Texas,
El Paso.

Aug. 1, 2002.

Lark H. Fogel, Parker, CO, for appellant.

Angela Morrow Nickey, Robles, Bracken, Coffman & Hughes, L.L.P., El Paso, for appellee.

Before Panel No. 1 LARSEN, McCLURE, and CHEW, JJ.

## OPINION

SUSAN LARSEN, Justice

Rosa Garcia appeals the trial court's summary judgment dismissing her discrimination claims against her employer Levi Strauss & Co. under TEX. LAB.CODE ANN. § 451.001. We affirm.

### Facts

Garcia has worked at Levi Strauss since 1982. During that time, she has sustained three on-the-job injuries, the first in 1988, the second in 1991, and the third in 1995. In accordance with Levi Strauss policy, Garcia filed workers' compensation claims concerning these injuries.

Garcia was making $11.27 an hour immediately before she went on medical leave for her 1991 injury. When she returned to work approximately two years later, the company reduced her pay to $4.71 an hour, pursuant to its inactive status policy. The policy provides that "the maximum length of any medical leave of absence is 12 months." Nevertheless, employees with "certain types of disabilities ... may qualify for 'inactive status' after expiration of 12 months on medical leave of absence." Employees on inactive status are still considered employees of Levi

Strauss, so long as they comply with certain requirements.

Once placed on inactive status, the employee must continue to provide Levi Strauss with medical reports from a treating physician every three months. If the employee fails to report to Levi Strauss on this basis, the inactive status is lost and the company considers the employee to have voluntarily quit. Employees on inactive status do not "continue to accrue company benefits or seniority."

Included in Levi Strauss's summary judgment evidence is a document entitled "Employee's Benefit Rights During Inactive Status." The document details the effect of inactive status on life insurance, accidental death and dismemberment insurance, medical coverage, disability coverage, pension plans, and profit sharing awards. Insurance coverage essentially ceases when an employee's inactive status begins. Any employee vested in the company's pension plan at the time inactive status begins continues to be vested, but those who do not meet the definition of "vested" at the time inactive status begins lose any benefits earned to that date. The document is silent as to any reduction of wage rates accrued once inactive status is taken.

Following her return to work from the 1991 injury, Garcia was told by one supervisor that all injured workers were "stupid and illiterate." In September 1998, another supervisor called her a "problem operator," who "wasn't going to last" and "was going to be out of there really fast" after being warned of allegedly inappropriate behavior. According to Garcia, the 1998 reprimand was not warranted because another supervisor had authorized the actions for which she was reprimanded. Garcia contends she was subjected to public ridicule at the time of the incident because management asked to see her time card over Levi's public address system. Specifically, she was jeered by some of her co-workers after that announcement, an action which indicated to her that she was being accused of stealing time from the company.

Following her return to work in 1995, Garcia maintained that employees were told that if they did not change in accordance with new company policies concerning injured workers, they "knew where the door was." She was also told by a supervisor that "the injured workers considered Levi Strauss to be the chicken with the golden eggs." Garcia complained to upper management about these comments in 1996. The record does not indicate what action, if any, Levi Strauss took concerning these reports. Garcia did not report any further incidents.

Garcia contends her salary reduction to minimum wage in 1995, along with hostile treatment by other company employees, constituted discrimination prohibited under TEX. LAB.CODE ANN. § 451.001. The company counters that her loss of pay was the result of a legitimate business policy, and no cause of action for harassment exists under section 451.001.[1]

The trial court granted summary judgment for Levi Strauss on all Garcia's claims. Garcia timely appealed.

### Standard of Review

■ In reviewing a traditional summary judgment proceeding, we determine

---

1. In her pleadings, Garcia also claimed discrimination stemming from her forced participation in Levi Strauss's re-entry program for employees who had taken leave for job-related injuries. In her deposition, however, Garcia acknowledged that she never participated in the re-entry program, nor has she brought any claims regarding the re-entry program on appeal.

whether the successful movant at trial sustained its burden of showing that no genuine issue of material fact exists such that judgment should be granted as a matter of law. *Olson v. Estate of Watson*, 52 S.W.3d 865, 868 (Tex.App.-El Paso 2001, no pet.); *Wyatt v. Longoria*, 33 S.W.3d 26, 31 (Tex. App.-El Paso 2000, no pet.); *see* TEX.R. CIV. P. 166a.[2] The question on appeal, therefore, is not whether the summary judgment proof raises fact issues as to required elements of the movant's cause or claim, but whether the summary judgment proof establishes that no genuine issue of material fact as to one or more elements of the movant's cause or claim exists as a matter of law. *Id.* In resolving the issue of whether the movant has carried this burden, all evidence favorable to the non-movant must be taken as true and all reasonable inferences, including any doubts, must be resolved in the non-movant's favor. *Id.*

### Elements of Section 451 Claim

Under section 451.001 of the Texas Labor Code, an employer "may not discharge or in any other manner discriminate against an employee" for filing a workers' compensation claim in good faith. TEX. LAB.CODE ANN. § 451.001 (Vernon 1996). There is no dispute in this case that Garcia was never discharged. This case therefore concerns whether Levi Strauss discriminated against Garcia "in any other manner" because she filed a workers' compensation claim.

 The purpose of section 451.001 is to protect persons entitled to benefits under the Workers' Compensation Act by preventing them from being discharged or otherwise discriminated against for filing claims to recover those benefits. *Dallas Area Rapid Transit v. Johnson*, 50 S.W.3d 738, 740 (Tex.App.-Dallas 2001, no pet.); *see Trico Technologies Corp. v. Montiel*, 949 S.W.2d 308, 312 (Tex.1997). To prevail on a section 451.001 claim, the employee must demonstrate some causal link between the employer's action and the fact of her workers' compensation claim, but section 451 causation does not require the employee to demonstrate that she was discriminated against solely because of her workers' compensation claim. *Continental Coffee Products Co. v. Cazarez*, 937 S.W.2d 444, 451 (Tex.1996). Instead, she must show that "but for" the filing of the claim, the discharge would not have occurred when it did. *Id.*

 "But for" causation may be established either by direct or circumstantial evidence and by reasonable inferences that can be drawn from such evidence. *Investment Properties Management, Inc. v. Montes*, 821 S.W.2d 691, 694 (Tex.App.-El Paso 1991, no writ); *Paragon Hotel Corporation v. Ramirez*, 783 S.W.2d 654, 658 (Tex.App.-El Paso 1989, writ denied). In this regard, circumstantial evidence sufficient to establish a causal link may include:

(1) knowledge of the compensation claim by the person discriminating against her;

(2) expression of a negative attitude toward the employee's injured condition;

(3) failure to adhere to established company policies;

(4) discriminatory treatment in comparison to similarly situated employees; and

---

2. Garcia contends the trial court erred in granting Levi Strauss's "no evidence motion." The record contains only a "traditional" motion for summary judgment filed pursuant to Rule 166a, not a Rule 166a(i) "no evidence" motion for summary judgment. We therefore review the trial court's decision solely pursuant to the standards for a Rule 166a motion. *Compare* TEX.R. CIV. P. 166a *with* TEX.R. CIV. P. 166a(i).

(5) evidence that the reason for the discharge was false.

*Cazarez,* 937 S.W.2d at 451; *Vallance v. Irving C.A.R.E.S., Inc.,* 14 S.W.3d 833, 837 (Tex.App.-Dallas 2000, no pet.); *Urquidi v. Phelps Dodge Refining Corp.,* 973 S.W.2d 400, 403–404 (Tex.App.-El Paso 1998, no writ).

### The Inactive Status Policy

In her first point of error, Garcia urges she raised a fact question as to whether Levi Strauss used its inactive status policy as a way to discriminate against her because of her workers' compensation claim. Specifically, she claims that her return to work at a lower rate of pay than that which she earned before her injury constituted discrimination within the meaning of section 451.

There is no dispute that Garcia was paid $4.71 an hour after she returned to work from her 1991 work-related injury, and that prior to leaving work because of that injury, she had been making $11.27 an hour. Garcia claims this pay cut constitutes discrimination against her because she filed a workers' compensation claim. Levi Strauss, on the other hand, claims the pay cut was instituted pursuant to its legitimate inactive status policy. Levi Strauss further contends it was entitled to summary judgment because Garcia's own testimony conceded that this policy required all employees on leave for over a year to lose all accumulated benefits, including pay above starting level.

 We analyze a section 451 claim pursuant to the same burden-shifting framework used by the federal courts with regard to Title VII and other anti-discrimination statutes. The employee has the initial "burden of establishing a causal link between the firing and the employee's claim for worker's compensation benefits." *Montes,* 821 S.W.2d at 694; *Terry v.*

*Southern Floral Co.,* 927 S.W.2d 254, 257 (Tex.App.-Houston [1st Dist.] 1996, no writ). That burden is satisfied by a showing that "but for" the employee's assertion of her workers' compensation claim, the employer's allegedly discriminatory action would not have occurred when it did. *Cazarez,* 937 S.W.2d at 451. Stated another way, the employee is not under a burden to prove that her workers' compensation claim was the sole cause of the employer's allegedly discriminatory behavior. *Montes,* 821 S.W.2d at 694.

 The *prima facie* burden on the employee is not a heavy one, Garcia satisfied the requirements of her *prima facie* case, and Levi Strauss acknowledges as much. The burden then shifted to Levi Strauss to demonstrate that its allegedly discriminatory actions were taken pursuant to a non-discriminatory legitimate business policy. *Terry,* 927 S.W.2d at 258. Levi Strauss urges that its inactive status policy, the structure of its compensation system, and the language that "[w]hile on inactive status, [an employee] will not continue to accrue company benefits or seniority" satisfied this burden. We agree. The burden then shifted back to Garcia to create a genuine issue of material fact rebutting Levi Strauss's assertion that its policies were not discriminatory. *Id.*

In attempting to satisfy this requirement, Garcia urges only that her post-injury reduction in pay constitutes "direct evidence of arbitrary compensation policies set by an employer to the damage and detriment of a returning worker's compensation claimant...." Whether Levi Strauss's policy is arbitrary, however, does not resolve the question. Rather, we must determine whether Garcia produced sufficient evidence to create a fact question as to whether Levi Strauss used its inactive status policy to discriminate against Garcia because she filed a workers' compensation

claim. We find no such evidence in this record.

■ Rather, Garcia's own testimony reflects that at least one other employee returning from inactive status did not receive a pay cut even though his medical leave was due to a work-related injury. Although this might be evidence of a poorly-administered policy, we cannot see how it implies that Levi Strauss's inactive status policy was a pretext for discrimination against workers' compensation claimants. We cannot say this evidence supports a fact question that Garcia received discriminatory treatment, or that the proffered reason for her pay cut was false. *Cazarez,* 937 S.W.2d at 451; *Vallance,* 14 S.W.3d at 837; *Urquidi,* 973 S.W.2d at 405. We can find no other evidence in the record regarding discriminatory application of the inactive policy status to workers' compensation claimants, and Garcia points us to none. She relies solely upon the fact that her pay was reduced upon her return to work after a two-year absence. This does not raise a fact question of discrimination for filing a workers' compensation claim. Garcia's point of error one is overruled.[3]

### The Hostile Environment Claim

In her second point of error, Garcia claims she was subjected to a hostile work environment upon returning to work after her 1991 work-related injury, and this constitutes a cause of action under the Labor Code. While acknowledging that no Texas court has recognized this theory of recovery in the section 451 context, Garcia nevertheless contends that a hostile work environment constitutes behavior prohibited within the meaning of its "in any other manner discriminate" language. We agree.

■ At least three Texas courts have opined that discrimination under section 451.001 can include employer action short of termination. *Castro v. U.S. Natural Resources, Inc.,* 880 S.W.2d 62, 65 (Tex. App.-San Antonio 1994, writ denied) (employee placed on indefinite leave without pay when he attempted to return to work following an on-the-job injury for which he filed a workers' compensation claim); *Southwestern Electric Power Company v. Martin,* 844 S.W.2d 229, 232 (Tex.App.-Texarkana 1992, writ denied) (change in employment status short of discharge can constitute discrimination within meaning of section 451); *see Western Atlas International, Inc. v. Wilson,* 930 S.W.2d 782, 787 n. 1 (Tex.App.-Tyler 1996, writ denied) ("[t]he statute contemplates any manner of discrimination including discharge"). Moreover, both Texas and federal law recognize that an employer can "discriminate" against an employee by creating, or permitting the creation or maintenance of, a hostile work environment because of that employee's sex, race, religion, color, national origin, or disability. *Dillard Department Stores, Inc. v. Gonzales,* 72 S.W.3d 398, 406 (Tex.App.-El Paso 2002, pet. ref'd). We believe this reasoning applies equally to the prohibition on otherwise discriminating against workers' compensation claimants. We thus hold that a hostile work environment can, under the right set of circumstances, constitute "other discrimination" within the meaning of section 451. We analyze Garcia's claims accordingly.

---

3. Garcia also challenges Levi Strauss's contention on summary judgment that the reduction in pay did not constitute an "adverse employment action" within the meaning of section 451. We need not reach that question. We note, however, that federal decisions do hold that a reduction in pay can constitute an "adverse employment action" within the meaning of the Title VII and other anti-discrimination statutes. *Dollis v. Rubin,* 77 F.3d 777, 782 (5th Cir.1995).

■ Extrapolating from other discrimination law, to establish its right to summary judgment on Garcia's claim of a hostile work environment, Levi Strauss must conclusively negate at least one of these five elements: (1) that Garcia belongs to a protected group; (2) that she was subjected to unwelcome harassment; (3) that the harassment was based on her having filed a workers' compensation claim; (4) that the harassment affected a term, condition, or privilege of her employment; or (5) that her employer knew, or should have known, of the harassment and failed to take prompt remedial action. *Skidmore v. Precision Printing and Packaging, Inc.*, 188 F.3d 606, 615 (5th Cir.1999); *Jones v. Flagship International*, 793 F.2d 714, 719–20 (5th Cir.1986); *Dillard*, 72 S.W.3d at 407. If fact questions exist on each of these elements, summary judgment was not warranted.

Taken in the light most favorable to Garcia, the record reflects the following evidence. Levi Strauss's nurse told her she looked like "an animal" (the context of this remark is not clear). On one occasion, a supervisor called her and other injured workers "stupid and illiterate." On another occasion, a supervisor said that the plant would close because of injured workers. At a meeting between managers and employees, they were told that conditions in the plant were going to change and that if the employee's did not like it they "knew where the door was." Garcia understood these comments to be directed at injured workers. Another Levi Strauss manager said injured workers considered Levi "to be the chicken with the golden eggs." A company manager asked other operators to make incident reports about Garcia and said, "Rosa won't last long here. She is going to leave very quickly." After she complained to higher management, however, the incident reports were removed from her personnel file and she was reimbursed for her three-day suspension. Lastly, Garcia testified she was unfairly treated with regard to a buy-out offer made to certain Levi Strauss employees, but she did ultimately receive the buy-out, and she knew of at least two employees with workers' compensation claims who received their buy-outs without problems.

■ To rise to an actionable level, a hostile environment must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787, 118 S.Ct. 2275, 2283, 141 L.Ed.2d 662 (1998). The Supreme Court has made it clear "that conduct must be extreme to amount to a change in the terms and conditions of employment. . . ." *Id.* at 788, 118 S.Ct. at 2284. The Supreme Court has held that " 'simple teasing', offhand comments, and isolated incidents unless extremely serious will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Id.* at 788, 118 S.Ct. at 2283; *Shepherd v. Comptroller of Public Accounts*, 168 F.3d 871, 874 (5th Cir.1999). A hostile work environment is one "so severe and pervasive that it destroys a protected classmember's opportunity to succeed in the workplace." *Shepherd*, 168 F.3d at 874.

■ To be sufficiently severe or pervasive, the conduct must be "extensive, longlasting, unredressed, and uninhibited" and "permeate the plaintiffs' work environment." *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 264 (5th Cir.1999). Conduct that is not severe enough to create a work environment that a reasonable person would find hostile or abusive will not trigger a hostile environment claim. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22, 114 S.Ct. 367, 370–71, 126 L.Ed.2d

295 (1993); *Garcia v. Schwab*, 967 S.W.2d 883, 885 (Tex.App.-Corpus Christi 1998, no pet.). Whether an environment is "hostile" or "abusive" can be determined only by reviewing all the circumstances, which may include the frequency of the conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance. *Harris*, 510 U.S. at 23, 114 S.Ct. at 371; *Garcia*, 967 S.W.2d at 885–86; *Faragher*, 524 U.S. at 787–88, 118 S.Ct. at 2283.

■ While Garcia's testimony demonstrates several unfriendly incidents related to her status as a workers' compensation claimant, the evidence as a whole does not create a genuine issue of material fact as to whether Levi Strauss's conduct was so severe and pervasive that it destroyed her ability to succeed in the workplace. *See Dillard*, 72 S.W.3d at 407 (cumulative effect of offensive behavior bears on determination of work environment, single incidents need not be viewed in isolation). We hold that Levi Strauss has conclusively negated the fourth element of a hostile environment claim, that the harassment affect a term, condition, or privilege of employment. Garcia's second point of error is overruled.

### Conclusion

The trial court's grant of summary judgment is affirmed.