COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

IDA RAMIREZ DENNEY,                                   )

                                                                              )             No.  08-01-00442-CV

Appellant,                          )

                                                                              )                 Appeal from the

v.                                                                           )

                                                                              )             
210th District Court

DILLARD TEXAS OPERATING
LIMITED        )

PARTNERSHIP d/b/a DILLARD=S,                     )         
of El Paso County, Texas

                                                                              )

Appellee.                           )                 
(TC# 97-4260)

                                                                              )

 

 

MEMORANDUM   OPINION

 

Appellant, Ida
Ramirez Denney, appeals from a judgment on the verdict in favor of Appellee, Dillard Texas Operating Limited Partnership d/b/a
Dillard=s (ADillard=s@). 
On appeal, Appellant raises a single issue:  whether the trial court abused its discretion
in excluding certain impeaching testimony. 
We reverse and remand for new trial.

SUMMARY
OF THE EVIDENCE

Appellant has
worked in retail sales for approximately a decade.  Most recently, she worked for Dillard=s in El Paso, Texas at the Sunland Park
location.  She was recruited and hired by
Dillard=s in
October 1995, as a sales associate.  








On April 1, 1999,
Appellant injured her right shoulder and knee while at work.  At the time of the accident, Appellant was
pregnant.  The injury was immediately
reported to Dillard=s and in
turn, to the Texas Workers=
Compensation Commission.  After
completing the necessary paperwork, Appellant went home.  She was in pain from the injury and unable to
drive herself.  The following day, she
went to the emergency room for treatment. 


Ultimately,
Appellant was referred to the El Paso Orthopedic Surgery Group and diagnosed
with a torn shoulder.  She was then
treated with ultrasound therapy for three weeks.  Appellant was not allowed to work during this
period.  Her treating physician, Dr.
Sides, then recommended surgery.  Due to
Appellant=s
pregnancy, surgery was delayed, but Appellant remained
unable to work.  Throughout her treatment
and time off from working, Appellant stayed in contact with Dillard=s, supplying management with the
required doctor=s notes
indicating she was released from work. 
It is undisputed that she complied with all of her employer=s leave-of-absence regulations and
completed all necessary medical paperwork. 
            Appellant=s child was born on August 1,
1999.  Surgery for her shoulder was then
scheduled for October 19, 1999. 
Appellant notified Dillard=s
in person of her surgical appointment on October 5, 1999.  Appellant=s
surgery was successfully performed as scheduled on October 19.  On October 19, she received a certified
letter from Dillard=s
notifying her she had been terminated. 
The listed reason for termination was failure to return from a leave of
absence.








Appellant was
terminated pursuant to a policy allowing employees to be terminated if they are
on a leave of absence from work for more than six months.  The policy expressly includes employees who
are on workers=
compensation leave.  Appellant was aware
of the policy generally, but unaware that a leave-of-absence status applied to
her while she was on workers=
compensation leave.  She never received a
leave-of-absence form from the company indicating when her period of leave
began or when it would expire.  Although
required by Dillard=s policy,
no such document was created in Appellant=s
case.  According to Appellant=s uncontroverted
testimony at trial, no one ever discussed her status, the leave-of-absence
policy, or the possibility that she might lose her job because of her absence
while on workers=
compensation leave.  

Appellant sued
Dillard=s under
Texas Labor Code Ch. 451, which prohibits employer retaliation against workers= compensation claimants.  Appellant=s
theory of the case was that she was fired because she sought workers= compensation benefits for her
injury.  Dillard=s
claims Appellant was terminated because of a nondiscriminatory absence-control
policy.  








During trial, both
parties focused on Dillard=s
leave of absence policy.  Appellant
argued the policy was discretionary and inconsistently applied.  Dillard=s
maintained the policy was applied uniformly and without discretion.  Two defense witnesses expressly testified
that managers had no authority to extend leave to injured workers beyond six
months.  In response, Appellant sought to
cross-examine these witnesses about Dillard=s
interrogatory responses indicating two other employees[1]
were allowed longer leaves of absence before they were terminated.  Pursuant to a motion in limine
requiring the attorneys to approach the bench before attempting to introduce
evidence of Dillard=s
treatment of other employees, Appellant twice explained to the court her desire
to question the witnesses about the inconsistencies in their trial testimony
and interrogatory responses.  In each
case, the court would not allow the impeaching evidence to be raised.  Appellant=s
attorneys were allowed to call and question one of the witnesses in order to
make an offer of proof for the appellate record.  At the conclusion of the offer of the proof,
they again requested and were denied permission to cross-examine the witnesses
before the jury.  On appeal, Appellant
now complains the trial court abused its discretion in excluding this
impeaching evidence.  

STANDARD
OF REVIEW

A trial court=s decision to admit or exclude evidence
is within its sound discretion.  City
of Brownsville v. Alvarado, 897 S.W.2d. 750, 753 (Tex. 1995); Durbin v. Dal-Briar Corp., 871 S.W.2d 263, 268 (Tex.App.--El Paso 1994, writ denied), disapproved on
other grounds, Golden Eagle Archery, Inc. v. Jackson, 24 S.W.3d 362 (Tex.
2000).  We may reverse a judgment based
upon the exclusion or admission of evidence only where:  (1) the trial court did err; and (2) the
error was reasonably calculated to cause and did cause rendition of an improper
judgment.  Gee v.
Liberty Mutual Fire Insurance Co., 765 S.W.2d 394, 396 (Tex. 1989); LaCoure v. LaCoure,
820 S.W.2d 228, 235 (Tex.App.--El Paso 1991, writ
denied).  An appellant need not
prove that Abut for@ the exclusion of the evidence a
different judgment would necessarily result.  Durbin, 871 S.W.2d at
267.  Rather, it is sufficient if
the appellant shows an improper verdict probably resulted.  McCraw v. Maris, 828 S.W.2d 756, 758
(Tex. 1992); Brooks v. Housing Authority of City of El Paso, 926 S.W.2d
316, 321 (Tex.App.--El Paso 1996, no writ).  Generally, all relevant evidence is
admissible.  Tex.R.Evid. 402; Durbin, 871 S.W.2d at 268.  A
trial court errs in excluding relevant evidence unless some rule or principle
requires its exclusion.  Id.

ANTI-RETALIATION
LAW













Texas Labor Code ' 451.001 prohibits an employer from
discharging or otherwise discriminating against an employee because that
employee has filed a workers=
compensation claim in good faith.  Tex.Lab.Code Ann. ' 451.001 (Vernon 1996).  In order to recover for wrongful termination
under this provision, a plaintiff must show a causal connection between her
compensation claim and her discharge.  Garcia v. Levi Strauss & Co., 85 S.W.3d 362, 367 (Tex.App.--El Paso 2002, no pet.); City of University
Park v. Van Doren, 65 S.W.3d 240, 248 (Tex.App.--Dallas 2001, pet. denied).  This causal link may be established through
circumstantial evidence.  Id.; Paragon Hotel Corp. v. Ramirez, 783 S.W.2d 654,
658 (Tex.App.--El Paso 1989, writ denied).  Circumstantial evidence sufficient to
establish a causal link between termination and filing a compensation claim
includes:  (1) knowledge of the
compensation claim by those making the decision to terminate; (2) a negative
attitude toward the employee=s
injured condition; (3) failure to adhere to established company policies; (4)
discriminatory treatment of the injured employee in comparison to similarly
situated employees; (5) providing incentives to refrain from reporting
on-the-job injuries; and (6) evidence that the reason for the discharge was
false.  Garcia,
85 S.W.3d at 367-68; Lozoya v. Air Systems
Components, Inc., 81 S.W.3d 344, 347-48 (Tex.App.--El
Paso 2002, no pet.); Wyler Industrial Works,
Inc. v. Garcia, 999 S.W.2d 494, 501 (Tex.App.--El
Paso 1999, no pet.).  As explained
by the Supreme Court, Athe
employee=s
protected conduct must be such that, without it, the employer=s prohibited conduct would not have
occurred when it did.@  Cont=l
Coffee Prods. Co. v. Cazarez, 937 S.W.2d 444, 450
(Tex. 1996)(quoting the test first articulated in Tex.
Dep=t
of Human Servs. v. Hinds, 904 S.W.2d 629, 636
(Tex. 1995)).  It is not necessary to
prove the workers=
compensation claim was the sole motivation for the discharge.  Cazarez, 937
S.W.2d at 451 n.3; Garcia, 85 S.W.3d at
367.  Nor is it necessary to show the
employee=s seeking
of benefits was the principle, or even a substantial reason for her discharge.  Cazarez, 937 S.W.2d at 451. 
Instead, the plaintiff need only show that but for the filing of the
claim, the firing would not have occurred when it did.  Id.; Lozoya,
81 S.W.3d at 347-48.

A defendant in a
discrimination suit brought under Chapter 451 is entitled to prevail if it is
proved that the negative employment action was the result of an application of
a legitimate non-discriminatory policy.  Texas Division-Tranter, Inc. v. Carrozza,
876 S.W.2d 312, 314 (Tex. 1994). 
Under Carrozza, a defendant-employer
may establish an affirmative defense by producing a nondiscriminatory reason
for dismissal of the plaintiff-employee. 
Porterfield v. Galen Hospital Corp., Inc., 948
S.W.2d 916, 919 (Tex.App.--San Antonio 1997, writ
denied); Gifford Hill American, Inc. v. Whittington, 899 S.W.2d 760, 763
(Tex.App.--Amarillo 1995, no writ).  However, the affirmative defense is only
available in those cases where the employer has applied the non-discriminatory
policy in a uniform manner.  Cazarez, 937 S.W.2d at 451;
Carrozza, 876 S.W.2d at 313.

A central issue in
this case is whether Dillard=s
adheres to and uniformly enforces a reasonable absence-control policy.  Dillard=s
provided evidence of such a policy. 
Uniform enforcement of the policy does not constitute retaliatory
discharge under the Labor Code.  See Cazarez, 937 S.W.2d at 451; Carrozza, 876 S.W.2d at 313.  Thus, the key question becomes whether
Dillard=s
uniformly enforces its policy.  Two
separate witnesses testified on behalf of Dillard=s
as to the uniform application of the leave-of-absence policy.  William Wilkson,
the General Store Manager at the Dillard=s
for which Appellant worked, first testified on direct examination, AI am telling the jury that if, if the
person has, has gone past their expiration date, according to Dillard=s policy, then these individuals have
been -- we have been instructed from Dillard=s
to go ahead and terminate employment, and that would be, for all of them,
without discretion.@  Later, on cross-examination the following
exchange took place:








Defense
Counsel:          Mr. Wilkson,
I want to show you this memo that Mr. Wenke was
referring to you, and it shows that the policy is uniformly enforced,
isn=t
that correct?

 

Mr.
Wilkson:                We
enforce that policy uniformly, with no discretion.

 

Defense
Counsel:          You were not picking on
Ms. Denney?

 

Mr.
Wilkson:                No.  If there were three or four people on there,
they would have all fallen under the same policy for my store.

 

Scott McMurtrie,
Dillard=s
Operating Manager at the Sunland Park location, also told the jury Dillard=s policy was uniformly enforced.  On direct examination, he testified as
follows:

Mr.
McMurtrie:            Makes
no difference.  We have six months
maximum leave and we don=t
have any discretion.  In the report, we
uniformly apply this rule to all of our associates.  If we started making decisions on our own on
who should be excluded from that rule, we would be discriminating if we treat
people differently.

 

Plaintiff
Counsel:           Okay.

 

Mr.
McMurtrie:            Wouldn=t
be fair.

 

Plaintiff
Counsel:           Dillard=s has never, ever extended during your
time at Sunland Park, has never extended leave for injured workers for more
than six months?

 

Mr.
McMurtrie:            I
have not seen it in any store.  I know
there=s a
provision in the work rules that say if you work for Dillard=s more than ten years, you can request
an extension.

 

Plaintiff
Counsel:           How about an employee
who has worked less than ten years?  Ever
seen an employee or know an employee that Dillard=s
has extended more than six months leave?








Mr.
McMurtrie:            No.  I do not.

 

Plaintiff
Counsel:           That has never happened
at Dillard=s,
correct?

 

Mr.
McMurtrie:            Never
happened in my store that I am aware of.

 

After each of
these exchanges, Appellant approached the bench and asked permission to
question the witnesses about inconsistent responses given in
interrogatories.  There was an especially
lengthy discussion after the first witness testified.  Appellant=s
counsel argued that Mr. Wilkson=s testimony opened the door for
questions related to other employees who had received more than six months
leave before they were discharged. 
Defense counsel argued the other employees should not be compared to
Appellant because they were not similarly situated.  Essentially, the defense maintained that
because the other employees worked for a different Dillard=s location and they may have been on
leave for other reasons, they should not be considered for purposes of the
case.  Appellant=s
counsel clearly responded that there was no intention of using the information
for comparison, but rather for impeachment. 
Nonetheless, the trial court denied the request each time.

RULE
613(a)

Texas Rule of
Evidence 613 relates to prior statements of witnesses and provides in part:








(a)        Examining Witness Concerning Prior
Inconsistent Statement.  In examining
a witness concerning a prior inconsistent statement made by the witness,
whether oral or written, and before further cross-examination concerning, or
extrinsic evidence of, such statement may be allowed, the witness must be told
the contents of such statement and the time and place and the person to whom it
was made, and must be afforded an opportunity to explain or deny such
statement.  If written, the writing need
not be shown to the witness at that time, but on request the same shall be
shown to opposing counsel.  If the
witness unequivocally admits having made such statement, extrinsic evidence of
same shall not be admitted.  This
provision does not apply to admissions of a party-opponent as defined in Rule
801(e)(2).

 

Tex.R.Evid. 613(a).  This rule allows a witness to be examined for
impeachment purposes about a prior statement inconsistent with his present
testimony.  Id.  The rationale for sanctioning such
impeachment is to show the witness has a capacity for making errors and his
testimony is unreliable.  Cirilo v. Cook Paint & Varnish Co., 476
S.W.2d 742, 748 (Tex.Civ.App.--Houston [1st Dist.]
1972, writ ref=d n.r.e.); Cathleen C. Herasimchuk,
Texas Rules Of Evidence Handbook,
Rule 613, pp. 610-12 (4th ed. 2001). 
Rule 613(a) should 
be liberally construed.  Aranda
v. State, 736 S.W.2d 702, 707 (Tex.Crim.App.
1987).  This gives the trial judge
discretion to admit any evidence that gives promise of exposing a
falsehood.  Id.  In order to fall subject to the rule, a
witness=s
statement does not have to be directly and explicitly contradictory.  See United States v. Dennis, 625 F.2d
782, 795-96 (8th Cir. 1980); see also Herasimchuk,
p. 614.  For example, the requirement of
inconsistency is satisfied if a witness changes position on a topic.  See United States v. McCrady,
774 F.2d 868, 873 (8th Cir. 1985).  Moreover, a witness may be impeached with
prior statements that are inconsistent with the impression the witness=s testimony generates.  See Pyles
v. State, 755 S.W.2d 98, 115 (Tex.Crim.App. 1988)(where Defendant=s
testimony created the impression he was a non-violent person and had no
intention of harming anyone in the commission of his crime and the State was
allowed to impeach him with photographic exhibits showing writings he had made
on his jail cell wall which indicated a propensity for violence).  As a general rule, the jury should be allowed
the opportunity to decide whether the statements are reconcilable or not.  Herasimchuk, p. at 615.

 








APPLICATION
OF LAW TO FACTS

In this case,
Appellant=s
attorneys sought to examine defense witnesses about the apparent inconsistency
between interrogatory responses and testimony at trial.  Dillard=s,
through the testimony of two of its managers, steadfastly maintained any and
all employees absent from work for more than six months would be
discharged.  Both witnesses claimed the
policy demanded termination of such employees without discretion.  Mr. McMurtrie went
so far as to state he had not seen a deviation from the policy at any
store.  Appellant=s
attorneys merely wished to question these same witnesses as to why their
interrogatory responses indicated two other employees had been given leaves of
absence for longer than six months.  Such
a line of questioning is allowed under Rule 613(a) as an inquiry regarding
prior inconsistent statements.  Tex.R.Evid. 613(a).  This evidence was relevant for impeachment
purposes.  Tex.R.Evid. 402, 613(a).  Whether Dillard=s
policy has been uniformly applied to all employees is at the heart of this
case.  Further, we do not find the
probative value of the evidence at issue to be substantially outweighed by the
danger of unfair prejudice, confusion of the issues, or misleading the
jury.  Tex.R.Evid. 403.  Dillard=s
essentially argues the interrogatory responses were not directly
contradictory.  As previously noted, they
need not be.  See Pyles,
755 S.W.2d at 115. Furthermore, by not allowing this
evidence, the jury was left with the impression that all Dillard=s employees were always terminated at
the time their leave of absence extended to six months.  At minimum, the evidence Appellant sought to
introduce would seem to conflict with this notion.  As such, the trial court=s ruling was erroneous.








Having found the
trial court erred in excluding impeaching evidence, we must now consider
whether the error was reasonably calculated to cause and did cause rendition of
an improper judgment.  Gee, 765
S.W.2d at 396; LaCoure, 820 S.W.2d at
235.  During deliberations, the jury sent
the court a note asking Aif
Dillard=s has
ever made an exception to the 6 month LOA [leave-of-absence] limit on employees
of less than 10 years.@  The court responded in writing, AYou have heard
all of the evidence.@  The jury subsequently returned a verdict in
favor of Dillard=s,
finding it had not discharged Appellant for filing a workers= compensation claim.

The trial court=s exclusion of the impeachment evidence
severely impeded Appellant=s
ability to demonstrate that Dillard=s
did not uniformly apply the policy used to justify her discharge.  The jury=s
inquiry accentuates the importance of the excluded evidence.  Given the jury=s
inquiry and the final verdict, we find this error probably caused the rendition
of an improper judgment.  Gee, 765
S.W.2d at 396; LaCoure, 820 S.W.2d at
235.  Accordingly, the judgment of the
trial court is reversed and the cause is remanded for new trial.

 

 

May
8, 2003

DAVID WELLINGTON
CHEW, Justice

 

Before Panel No. 5

Larsen, J., Chew, J., and Preslar, C.J. (Ret.)

Preslar, C.J. (Ret.)(Sitting by Assignment)











[1]
Anna Conger was injured on July 12, 1996, and terminated on May 2, 1997.   Hanh Hodges was
injured on October 5, 1995, and terminated on September 18, 1996.  Both employees were terminated for failing to
return from leaves of absence.