KIMBERLEE TROSPER, APPELLANT,
v. BAG 'N SAVE, APPELLEE.
734 N.W.2d 704

Filed July 6, 2007.    No. S-05-889.

Michael P. Dowd, of Dowd, Howard & Corrigan, L.L.C., for appellant.

Robert F. Rossiter, Jr., and Sherman P. Willis, of Fraser, Stryker, Meusey, Olson, Boyer & Bloch, P.C., for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

Under Nebraska law, an employer, without incurring liability, generally may terminate an at-will employee at any time. But in *Jackson v. Morris Communications Corp.*,[1] we held a public policy exception to this rule applies when an employer wrongfully discharges an employee in retaliation for filing a workers' compensation claim. Kimberlee Trosper alleges not that she was fired, but that she was demoted because she pursued workers' compensation. This case presents the question whether we should extend the public policy exception to include retaliatory demotion. Extending our ruling in *Jackson*, we now hold that demotion, like discharge, violates public policy. We reverse, and remand for further proceedings.

## BACKGROUND

Trosper filed a complaint alleging the following: Bag 'N Save employed her as a "deli manager." During the course of her employment, she suffered a work-related injury which required medical treatment. When she reported her injury to her employers, the company demoted her from "deli manager" to "deli clerk," and her annual salary decreased from $30,100 to $22,500. Trosper's complaint does not allege that she filed for workers' compensation. Bag 'N Save, however, acknowledges that Trosper filed a workers' compensation claim and that she reported the injury under the Nebraska Workers' Compensation Act.[2]

---

[1] *Jackson v. Morris Communications Corp.*, 265 Neb. 423, 657 N.W.2d 634 (2003).

[2] See Neb. Rev. Stat. §§ 48-101 to 48-1,117 (Reissue 2004 & Cum. Supp. 2006).

Trosper alleged that Bag 'N Save acted in a retaliatory manner contrary to our decision in *Jackson v. Morris Communications Corp.*[3] Bag 'N Save moved to dismiss under Neb. Ct. R. of Pldg. in Civ. Actions 12(b)(6) (rev. 2003), alleging that the complaint failed to state a claim upon which relief could be granted. The trial court sustained the motion and dismissed the complaint.

■ Whether a petition states a cause of action is a question of law which requires this court to reach a conclusion independent of the trial court.[4]

## ASSIGNMENT OF ERROR

Trosper assigns, restated, that the district court erred as a matter of law in sustaining Bag 'N Save's motion to dismiss.

## ANALYSIS

Trosper urges this court to adopt a cause of action for retaliatory demotion when an employer demotes an employee for filing a workers' compensation claim. She contends that demotion, like termination, frustrates the public policy behind the Nebraska Workers' Compensation Act. Bag 'N Save argues that the public policy exception should be restricted to situations involving discharge. It argues that demotion does not implicate the same concerns as discharge and that expanding the tort could cause a flood of litigation.

### NEBRASKA JURISPRUDENCE ON PUBLIC POLICY EXCEPTION

■ Unless constitutionally, statutorily, or contractually prohibited, an employer, without incurring liability, may terminate an at-will employee at any time with or without reason.[5] We recognize, however, a public policy exception to the at-will employment doctrine. Under the public policy exception, we will allow an employee to claim damages for wrongful discharge when the motivation for the firing contravenes public policy.[6] The public policy exception is restricted to cases when a clear

---

[3] *Jackson v. Morris Communications Corp., supra* note 1.

[4] See *id.*

[5] *Id.; Malone v. American Bus. Info.*, 262 Neb. 733, 634 N.W.2d 788 (2001).

[6] *Jackson v. Morris Communications Corp., supra* note 1.

mandate of public policy has been violated, and it should be limited to manageable and clear standards.[7] In determining whether a clear mandate of public policy is violated, courts should inquire whether the employer's conduct contravenes the letter or purpose of a constitutional, statutory, or regulatory provision or scheme.[8]

We have addressed whether a public policy exception to the at-will employment doctrine should apply in several cases. We have previously recognized public policy exceptions when a statute prohibits an employer from discharging an employee.[9] And we have recognized the exception when an employee reports, in good faith, his suspicions that his employer is violating a criminal law.[10] In contrast, we determined that the Nebraska Wage Payment and Collection Act did not "represent a 'very clear mandate of public policy' which would warrant recognition of an exception to the employment-at-will doctrine."[11] That act did not prohibit employers from discharging employees, and it did not provide employees with any substantive rights. Instead, it was primarily remedial, providing an enforcement mechanism for rights that already exist.[12]

Recently, in *Jackson*, we recognized a public policy exception to the at-will employment doctrine and permitted a cause of action when an employer discharges an employee for filing a claim under the Nebraska Workers' Compensation Act. In *Jackson*, we acknowledged that the Nebraska Workers' Compensation Act, like the Nebraska Wage Payment and Collection Act, does not include a statutory prohibition that prevents employers from discharging employees who assert their

---

[7] *Id.*; *Ambroz v. Cornhusker Square Ltd.*, 226 Neb. 899, 416 N.W.2d 510 (1987).

[8] *Schriner v. Meginnis Ford Co.*, 228 Neb. 85, 421 N.W.2d 755 (1988).

[9] See *Ambroz v. Cornhusker Square Ltd., supra* note 7.

[10] See *Schriner v. Meginnis Ford Co., supra* note 8.

[11] *Malone v. American Bus. Info., supra* note 5, 262 Neb. at 739, 634 N.W.2d at 793. Accord *Ambroz v. Cornhusker Square Ltd., supra* note 7.

[12] See Neb. Rev. Stat. §§ 48-1228 to 48-1232 (Reissue 2004).

rights under the act.[13] We, however, cited other states which recognized public policy exceptions absent a clear statutory ban.[14]

■ Moreover, unlike the Nebraska Wage Payment and Collection Act, the Nebraska Workers' Compensation Act creates substantive rights to compensation arising from the statute itself. It serves the important and beneficent purpose of protecting injured workers from the adverse economic effects of work-related injuries and occupational disease and binds employers to compensate injured workers. This duty "would be seriously frustrated if employers were able to prevent employees from filing claims through the threat of discharge."[15] We further explained:

> To hold that there is not a clear public policy warranting an exception to the at-will employment doctrine would ignore the beneficent nature of the Nebraska Workers' Compensation Act. This, in effect, would allow an employer to say to the employee: "'Although you have no right to a tort action, you have a right to a workmen's compensation claim which, while it may mean less money, is a sure thing. However, if you exercise that right, we will fire you.'"[16]

Thus, we held that the Nebraska Workers' Compensation Act presented a clear mandate of public policy warranting application of the exception.

Trosper now requests that we expand our cause of action for retaliatory discharge to retaliatory demotion.

### OTHER STATES' CASE LAW INVOLVING RETALIATORY CONDUCT SHORT OF DISCHARGE

We have not previously addressed whether our cause of action for retaliatory discharge should be expanded to include

---

[13] Cf. *Malone v. American Bus. Info., supra* note 5.

[14] See, *Hansen v. Harrah's*, 100 Nev. 60, 675 P.2d 394 (1984); *Murphy v. City of Topeka*, 6 Kan. App. 2d 488, 630 P.2d 186 (1981).

[15] *Jackson v. Morris Communications Corp., supra* note 1, 265 Neb. at 431, 657 N.W.2d at 640.

[16] *Id.* at 432, 657 N.W.2d at 640, quoting *Leach v. Lauhoff Grain Co.*, 51 Ill. App. 3d 1022, 366 N.E.2d 1145, 9 Ill. Dec. 634 (1977).

any lesser retaliatory actions against employees who file workers' compensation claims. Other jurisdictions provide some guidance.

In *Zimmerman v. Buchheit of Sparta, Inc.*,[17] a plurality of the Illinois Supreme Court rejected a claim for retaliatory demotion. The court first addressed this claim as a possible extension of its retaliatory discharge tort.[18] In declining to expand the tort, the court cited several Illinois cases which had narrowly interpreted the cause of action.[19]

The *Zimmerman* court stated that the element of discharge was essential to the tort it had created. It explained,

> In our view, adoption of plaintiff's argument [a cause of action for retaliatory demotion] would replace the well-developed element of discharge with a new, ill-defined, and potentially all-encompassing concept of retaliatory conduct or discrimination. The courts then would be called upon to become increasingly involved in the resolution of workplace disputes which center on employer conduct that heretofore has not been actionable at common law or by statute.[20]

The plaintiff's recitations of the "general principles of policy" behind retaliatory discharge did not sway the court.[21] It held that

---

[17] *Zimmerman v. Buchheit of Sparta, Inc.*, 164 Ill. 2d 29, 645 N.E.2d 877, 206 Ill. Dec. 625 (1994).

[18] See *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 384 N.E.2d 353, 23 Ill. Dec. 559 (1978) (adopting exception for retaliatory discharge for filing workers' compensation claim).

[19] See, e.g., *Hartlein v. Illinois Power Co.*, 151 Ill. 2d 142, 601 N.E.2d 720, 176 Ill. Dec. 22 (1992); *Hinthorn v. Roland's of Bloomington, Inc.*, 119 Ill. 2d 526, 519 N.E.2d 909, 116 Ill. Dec. 694 (1988); *Hindo v. University of Health Sciences*, 237 Ill. App. 3d 453, 604 N.E.2d 463, 178 Ill. Dec. 207 (1992) (court of appeals rejected retaliatory demotion as cause of action); *Scheller v. Health Care Service Corp.*, 138 Ill. App. 3d 219, 485 N.E.2d 26, 92 Ill. Dec. 471 (1985) (declining to expand tort to constructive discharge).

[20] *Zimmerman v. Buchheit of Sparta, Inc.*, *supra* note 17, 164 Ill. 2d at 39, 645 N.E.2d at 882, 206 Ill. Dec. at 630.

[21] *Id.*

the plaintiff had not established a compelling reason to expand the cause of action.

The court also rejected the plaintiff's claim under an Illinois statutory provision which made it unlawful for an employer to "discriminate" against an employee because he exercised his rights under that state's workers' compensation act. In its discussion, the court pointed out that the "plaintiff fail[ed] to explain the manner in which demotions, as distinct from terminations, relieve employers of their responsibility to compensate employees for their work-related injuries."[22]

Only two justices joined the majority decision. Two concurring justices and two dissenting justices disagreed with the plurality's decision to treat retaliatory demotion and retaliatory discharge differently. The concurring justices stated that the courts should leave recognition of both retaliatory discharge and demotion to the legislature. The concurrence pointed out, however, that refusing to recognize a tort of retaliatory demotion while maintaining the retaliatory discharge tort created a "glaring loophole" because employers could simply retaliate by demoting rather than firing employees who file workers' compensation claims.[23]

The dissent argued the cause of action should be extended to demotion because there is "no principled way to distinguish the two situations."[24] The dissent relied on an Illinois statute which made it a crime to either discharge or discriminate against workers who filed workers' compensation claims.

In response to the concurring and dissenting opinions, the plurality wrote:

> Neither the dissent nor the concurrence acknowledges that this court acts within its authority in reaffirming the well-settled and limited tort of retaliatory discharge, as an exception to the at-will employment doctrine, without being constrained to open broad new avenues of litigation

---

[22] *Id.* at 44, 645 N.E.2d at 884, 206 Ill. Dec. at 632.

[23] *Id.* at 46, 645 N.E.2d at 885, 206 Ill. Dec. at 633 (Bilandic, C.J., concurring).

[24] *Id.* at 52, 645 N.E.2d at 888, 206 Ill. Dec. at 636 (Harrison, J., dissenting).

for other, less defined types of retaliatory conduct in the workplace.[25]

Similarly, the Utah Supreme Court rejected a cause of action for retaliatory harassment or discrimination against an employee who disagreed with how an employer treated employees who filed workers' compensation claims. In *Touchard v. La-Z-Boy Inc.*,[26] the Utah court determined that the public policy exception behind retaliatory discharge did not apply "to the same extent when the employee . . . does not have the fear of losing his or her employment." The court also expressed concern that to recognize such a claim would expand the public policy exception beyond its intended narrow scope by implicating "a much broader range of behavior, including *demotions*, salary reductions, job transfers, or disciplinary actions."[27]

In contrast, the Kansas Supreme Court has recognized a cause of action for retaliatory demotion. In *Brigham v. Dillon Companies, Inc.*,[28] the Kansas court analyzed the *Zimmerman* decision, focusing on the concurring and dissenting opinions. The Kansas court pointed out that four of seven justices on the *Zimmerman* court—both the concurring and dissenting justices—believed it was inconsistent to recognize a cause of action for retaliatory discharge, but not demotion.

The Kansas court, in recognizing a cause of action for retaliatory demotion, reasoned:

> The employers' violation of public policy and the resulting coercive effect on the employee is the same in both [termination and demotion]. The loss or damage to the demoted employee differs in degree only. We do not share the employers' concern that a torrent of litigation of insubstantial employment matters would follow in the wake of our recognition of a cause of action for retaliatory demotion and, even if we did, it does not constitute a valid

---

[25] *Id.* at 45-46, 645 N.E.2d at 885, 206 Ill. Dec. at 633.

[26] *Touchard v. La-Z-Boy Inc.*, 148 P.3d 945, 955 (Utah 2006).

[27] *Id.* (emphasis supplied).

[28] *Brigham v. Dillon Companies, Inc.*, 262 Kan. 12, 935 P.2d 1054 (1997).

reason for denying recognition of an otherwise justified cause of action.

We conclude that the recognition of a cause of action for retaliatory demotion is a necessary and logical extension of the cause of action for retaliatory discharge. To conclude otherwise would be to repudiate this court's recognition of a cause of action for retaliatory discharge. The obvious message would be for employers to demote rather than discharge employees in retaliation for filing a workers compensation claim or whistleblowing. Thus, employers could negate this court's decisions recognizing wrongful or retaliatory discharge by taking actions falling short of actual discharge.[29]

Bag 'N Save cites several cases refusing to expand the public policy exception to other retaliatory actions short of discharge.[30] But we do not find that authority persuasive. Here, we address only demotion. Moreover, most of the cases cited did not involve retaliatory actions for filing a workers' compensation claim and thus, did not address the same policy concerns now before us.[31] Although one of the cases cited is a workers' compensation case, it is distinguishable because it involved the unique circumstance where the plaintiffs had filed for workers' compensation under a different state's statute.[32] Finally,

---

[29] *Id.* at 20, 935 P.2d at 1059-60.

[30] See, *Sanchez v. Philip Morris Inc.*, 992 F.2d 244 (10th Cir. 1993) (failure to hire); *Warnek v. ABB Combustion Eng'g*, 137 Wash. 2d 450, 972 P.2d 453 (1999) (failure to rehire); *White v. State*, 131 Wash. 2d 1, 929 P.2d 396 (1997) (wrongful transfer); *Mintz v. Bell Atlantic Systems Leasing*, 183 Ariz. 550, 905 P.2d 559 (Ariz. App. 1995) (failure to promote).

[31] See, *Sanchez v. Philip Morris Inc., supra* note 30 (involving national origin discrimination); *White v. State, supra* note 30 (retaliation in violation of First Amendment right to freedom of speech); *Mintz v. Bell Atlantic Systems Leasing, supra* note 30 (retaliation for filing sex discrimination claim). See, also, *Ludwig v. C & A Wallcoverings, Inc.*, 960 F.2d 40 (7th Cir. 1992) (refusing to recognize cause of action for retaliatory demotion when employee reported supervisor's alleged misconduct).

[32] See *Warnek v. ABB Combustion Eng'g, supra* note 30.

one other jurisdiction has taken the opposite view and allowed claims for lesser retaliatory actions.[33]

### NEBRASKA RECOGNIZES A CAUSE OF ACTION FOR RETALIATORY DEMOTION FOR FILING A WORKERS' COMPENSATION CLAIM

■ Focusing on our rationale in *Jackson*, we conclude that a cause of action for retaliatory demotion exists when an employer demotes an employee for filing a workers' compensation claim. When we recognized a retaliatory discharge claim, we reasoned that "a rule which allows fear of retaliation for the filing of a claim undermines [the important public policy of the Nebraska Workers' Compensation Act]."[34] And we stated that "'the employee must be able to exercise his right in an unfettered fashion without being subject to reprisal.'"[35]

■ An employee's right to be free from retaliatory demotion for filing a workers' compensation claim is married to the right to be free from discharge. Demotion, like termination, coercively affects an employee's exercise of his or her rights under the Nebraska Workers' Compensation Act. If we fail to recognize a claim for retaliatory demotion, it would create an incentive for employers to merely demote, rather than discharge, employees who exercise their rights. To promote such behavior would compromise the act and would render illusory the cause of action for retaliatory discharge. Thus, we believe that extending the tort created in *Jackson* to include retaliatory demotion is a logical step, and one which gives vitality to that decision.

---

[33] See, *Lawson v. AK Steel Corp.*, 121 Ohio App. 3d 251, 699 N.E.2d 951 (1997) (recognizing wrongful demotion cause of action when employer fired employee for whistleblowing); *Powers v. Springfield City Schools*, No. 98-CA-10, 1998 Ohio App. LEXIS 2827 (Ohio App. June 26, 1998) (unpublished opinion) (recognizing wrongful denial of promotion cause of action for whistleblowing). See, also, *Kulch v. Structural Fibers, Inc.*, 78 Ohio St. 3d 134, 162, 677 N.E.2d 308, 328 (1997) (recognizing common-law tort action for "wrongful discharge/discipline" in violation of public policy).

[34] *Jackson v. Morris Communications Corp.*, supra note 1, 265 Neb. at 432, 657 N.W.2d at 640-41.

[35] *Id.* at 429, 657 N.W.2d at 639, quoting *Hansen v. Harrah's*, supra note 14.

■ We disagree with Bag 'N Save's contention that our case law advises against recognizing a tort for retaliatory demotion. Bag 'N Save cites our refusal in *White v. Ardan, Inc.*,[36] to adopt claims of "malicious termination" or "bad faith discharge" as indicating that we narrowly interpret the public policy exception. But in *White*, the plaintiffs' terminations did not implicate a clear public policy. The plaintiffs simply alleged that their employer fired them because an executive falsely accused them of dishonesty. In *White*, the plaintiffs failed to show that a constitutional, statutory, or regulatory provision or scheme warranted an exception to the "'terminable-at-will' rule."[37] Our refusal to recognize a cause of action in *White* is easily distinguishable from the present case because we have already determined that the Nebraska Workers' Compensation Act provides a clear public policy mandate.[38] And an employer's conduct in demoting an employee contravenes this policy, just as discharge does.

Bag 'N Save also refers us to *Collins v. Baker's Supermarkets*,[39] where we held that an employee's demotion did not violate Neb. Rev. Stat. § 81-1932 (Reissue 1999). Section 81-1932 prohibits an employer from terminating an employee based on the results of the employee's polygraph examination. Under the plain language of the statute, it only prohibited termination. Thus, the statute simply did not apply to demotion. *Collins* is not controlling.

We recognize that demotion may not be as severe as discharge in that it affects only the terms of employment, rather than the "essence" of the employment.[40] But this is not a compelling distinction. Although *Jackson* specifically addressed discharge, more broadly, the intent in *Jackson* was to protect the important public policy and beneficent purpose of the Nebraska Workers' Compensation Act. Although demotion is less harsh

---

[36] See *White v. Ardan, Inc.*, 230 Neb. 11, 16-17, 430 N.W.2d 27, 31 (1988).

[37] *Id.* at 15, 430 N.W.2d at 30.

[38] See *Jackson v. Morris Communications Corp., supra* note 1.

[39] *Collins v. Baker's Supermarkets*, 223 Neb. 365, 389 N.W.2d 774 (1986).

[40] See Mark A. Rothstein, *Wrongful Refusal to Hire: Attacking the Other Half of the Employment-at-Will Rule*, 24 Conn. L. Rev. 97, 143 (1991).

than dismissal, nevertheless, it would shrink an employee's right to pursue workers' compensation. Allowing employers to demote an employee for filing a workers' compensation claim would circumvent the policy in *Jackson*.

We acknowledge that allowing a cause of action for retaliatory demotion could result in claims for other retaliatory conduct. As usual in common-law adjudication, we will deal with those concerns case-by-case. Today, we address demotion, and nothing more. Further, we do not believe that the courts will be flooded with suits over insubstantial employment matters resulting in excessive judicial entanglement. But even so, an increase in litigation would "not constitute a valid reason for denying recognition of an otherwise justified cause of action."[41]

## CONCLUSION

Here, Trosper's petition alleged that Bag 'N Save demoted her in retaliation for reporting a work-related injury. Because we recognize that a cause of action exists, we reverse, and remand for further proceedings. We note that to the extent Trosper's petition lacks factual allegations, she should be given leave to amend.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

---

[41] *Brigham v. Dillon Companies, Inc., supra* note 28, 262 Kan. at 20, 935 P.2d at 1059.

---

GERRARD, J., concurring.

I join fully in the majority opinion. I write separately to address two issues raised by the dissenting opinion. The dissent advances these primary contentions: that our holding unwisely expands our retaliatory discharge rule announced in *Jackson v. Morris Communications Corp.*[1] and that the issue of retaliatory demotion should be addressed only by the Legislature. I respectfully disagree. The Legislature certainly could, if it

---

[1] *Jackson v. Morris Communications Corp.*, 265 Neb. 423, 657 N.W.2d 634 (2003).

chose, follow the example of other states and address the issues presented in this case, but that does not preclude this court from acting upon the public policy already expressed in the Nebraska Workers' Compensation Act. And the statutes enacted in other states, relied upon by the dissent, actually demonstrate that a rule protecting employees from retaliatory demotion is practical and fair.

The dissenting opinion begins by asserting that we are expanding the "narrow exception" to the at-will employment doctrine that we adopted in *Jackson* into a new theory of liability for retaliatory demotion. I simply do not agree with the articulated basis for making a distinction in these circumstances. We explained in *Jackson* that the overriding purpose of the Nebraska Workers' Compensation Act[2] would be seriously frustrated if employers were able to prevent employees from filing claims through the threat of discharge. The same is true for retaliation short of discharge—the only difference is the nature and extent of the damage suffered by the employee.[3] The Nebraska Workers' Compensation Act is equally subverted if an employer can threaten a potential claimant with retaliation that is short of discharge but substantial enough to deter the filing of a claim.

The dissenting opinion suggests that today's holding may prove unworkable. But the dissent's argument is contrary to decades of experience with similar rules, in Nebraska and other jurisdictions. As the dissent notes, many other jurisdictions have enacted statutes that protect workers' compensation claimants from retaliation.[4] Those statutes generally bar an employer from

---

[2] Neb. Rev. Stat. § 48-101 et seq. (Reissue 2004 & Cum. Supp. 2006).

[3] See, *Brigham v. Dillon Companies, Inc.*, 262 Kan. 12, 935 P.2d 1054 (1997); *White v. State*, 131 Wash. 2d 1, 929 P.2d 396 (1997) (Madsen, J., concurring); *Garcia v. Rockwell Intern. Corp.*, 187 Cal. App. 3d 1556, 232 Cal. Rptr. 490 (1986).

[4] See, e.g., Conn. Gen. Stat. Ann. § 31-290a (West 2003); Mo. Ann. Stat. § 287.780 (West 2005); N.Y. Workers' Comp. Law § 120 (McKinney 2006); N.C. Gen. Stat. § 95-241 (2005); Ohio Rev. Code Ann. § 4123.90 (LexisNexis 2001); S.C. Code Ann. § 41-1-80 (West Cum. Supp. 2006); Tex. Lab. Code Ann. § 451-001 (Vernon 2006); Vt. Stat. Ann. tit. 21, § 710 (2003); Wash. Rev. Code Ann. § 51.48.025(1) (West 2002).

"discriminating" against a claimant, but have been understood to give rise to civil remedies for retaliation short of discharge.[5] Yet those states answered the questions posed by the dissent and avoided the calamities that the dissent predicts.

They have done so because their laws, and our holding, are not, as the dissenting opinion suggests, radical departures from well-settled law. Rather, they apply a well-settled, developed, and extensive body of law regarding discrimination and retaliation. Our Legislature has enacted comparable antidiscrimination statutes in a variety of contexts.[6] And this court has already been required to address circumstances involving employer action short of discharge.[7]

We have handled those situations, as have other jurisdictions, by incorporating the *McDonnell Douglas*[8] burden-shifting analysis familiar from discrimination cases.[9] Most recently, in *Riesen v. Irwin Indus. Tool Co.*,[10] we applied that burden-shifting analysis to a case involving retaliatory discharge for filing a workers' compensation claim. We explained that "[t]o establish a prima facie case of unlawful retaliation, an employee must show that he or she participated in a protected activity, that the employer took an adverse employment action against him or her, and that a causal connection existed between the protected

---

[5] See, e.g., *Mele v. City of Hartford*, 270 Conn. 751, 855 A.2d 196 (2004); *Robel v. Roundup Corp.*, 148 Wash. 2d 35, 59 P.3d 611 (2002); *Murray v. St. Michael's College*, 164 Vt. 205, 667 A.2d 294 (1995); *Garcia v. Levi Strauss & Co.*, 85 S.W.3d 362 (Tex. App. 2002); *Palermo v. Tension Envelope Corp.*, 959 S.W.2d 825 (Mo. App. 1997).

[6] See, e.g., Neb. Rev. Stat. §§ 48-1004 and 48-1114 (Reissue 2004).

[7] See, *Fraternal Order of Police v. County of Douglas*, 270 Neb. 118, 699 N.W.2d 820 (2005); *Humphrey v. Nebraska Public Power Dist.*, 243 Neb. 872, 503 N.W.2d 211 (1993).

[8] See *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

[9] See, *Fraternal Order of Police, supra* note 7; *Humphrey, supra* note 7; *Helvering v. Union Pacific RR. Co.*, 13 Neb. App. 818, 703 N.W.2d 134 (2005).

[10] *Riesen v. Irwin Indus. Tool Co.*, 272 Neb. 41, 717 N.W.2d 907 (2006).

activity and the adverse employment action."[11] If the employee succeeds in proving a prima facie case, the burden shifts to the employer to articulate some legitimate, lawful reason for the adverse employment action. If the employer articulates a nondiscriminatory reason for disparate treatment of the employee, the employee maintains the burden of proving that the stated reason was pretextual.[12]

As we noted in *Riesen*, most jurisdictions have applied this burden-shifting analysis to workers' compensation retaliatory discharge cases.[13] But as we implied in *Riesen*, this framework is also applicable to other "adverse employment action[s]."[14] And other jurisdictions have applied that burden-shifting framework to claims of retaliation short of discharge against workers' compensation claimants.[15] This has allowed those courts to take advantage of the breadth of jurisprudence in which a burden-shifting analysis has been used to resolve similar claims of adverse employment actions.[16]

The dissenting opinion poses a number of questions about various issues of fact courts may be asked to decide. But in any given case, the issue will always be whether the employer has engaged in actions that violate public policy, and courts have routinely examined similar questions in a wide variety of cases. In particular, courts have routinely addressed issues of workplace discrimination and retaliation involving employer action other than discharge.[17] I do not understand why those issues will be more difficult to address when the alleged retaliation is based on a workers' compensation claim, as opposed to any other

---

[11] *Id.* at 48-49, 717 N.W.2d at 915.

[12] See *id.*

[13] *Id.* (citing cases).

[14] See *id.* at 49, 717 N.W.2d at 915.

[15] See, e.g., *Mele, supra* note 5; *Murray, supra* note 5; *Garcia, supra* note 5.

[16] See, e.g., *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636 (2d Cir. 2000); *Sanchez v. Denver Public Schools*, 164 F.3d 527 (10th Cir. 1998); *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453 (11th Cir. 1998).

[17] See *White, supra* note 3 (Madsen, J., concurring).

activity protected by public policy. While a work-related injury may bring about legitimate temporary or permanent changes in an employment relationship, I respectfully suggest that the law is well equipped to ferret out substantial claims of retaliatory demotion versus petty complaints by the employee or legitimate changes in employment by the employer.

The well-understood principles of antidiscrimination law provide more clarity than the dissent's proposed rule, which would present the difficult problem of separating "constructive discharge" from lesser forms of retaliation.[18] And if an identified public policy is important enough that a wrongful discharge claim should be allowed, then it is important enough to support a claim based on lesser acts of an employer that may just as effectively contravene a clear mandate of public policy.[19] The common-law principles of at-will employment have already adapted to functionally identical restrictions. Employers in Nebraska should already be familiar with the hazards of retaliatory "adverse employment actions" other than termination, due to similar rules against retaliation imposed by other state and federal laws.[20]

Nor do I believe the dissent's fears of undue interference with the employment relationship are justified. It is well understood that some threshold level of substantiality must be met for a plaintiff to make a prima facie case of unlawful retaliation.[21]

---

[18] See, e.g., *National Sec. Ins. Co. v. Donaldson*, 664 So. 2d 871 (Ala. 1995).

[19] See *White, supra* note 3 (Madsen, J., concurring).

[20] See, e.g., *Meyers v. Starke*, 420 F.3d 738 (8th Cir. 2005); *Jacob-Mua v. Veneman*, 289 F.3d 517 (8th Cir. 2002) (retaliatory demotion); *Bradley v. Widnall*, 232 F.3d 626 (8th Cir. 2000); *Scusa v. Nestle U.S.A. Co., Inc.*, 181 F.3d 958 (8th Cir. 1999); *Williams v. KETV Television, Inc.*, 26 F.3d 1439 (8th Cir. 1994); *Carlton v. Union Pacific R.R.*, No. 8:05CV293, 2006 WL 3290323 (D. Neb. Nov. 13, 2006); *Weigand v. Spadt*, 317 F. Supp. 2d 1129 (D. Neb. 2004) (retaliatory demotion); *Letares v. Ashcroft*, 302 F. Supp. 2d 1092 (D. Neb. 2004); *Mustafa v. State of Nebraska Dept. of Correctional*, 196 F. Supp. 2d 945 (D. Neb. 2002); *Fraternal Order of Police, supra* note 7.

[21] See, e.g., *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274 (11th Cir. 1999).

A plaintiff sustains an "adverse employment action," as we used the phrase in *Riesen*,[22] if he or she suffers a materially adverse change in the terms and conditions of employment.[23] To be materially adverse, a change in working conditions must be a significant change in employment status, more disruptive than a mere inconvenience or an alteration of job responsibilities.[24] As the U.S. Supreme Court recently explained, for the challenged action to be materially adverse, it must be such that "'it well might have "dissuaded a reasonable worker"'" from engaging in the activity protected by public policy.[25] Although the significance of any given act of retaliation will often depend upon the particular circumstances, an employee's decision to engage in protected activity cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience.[26] A plaintiff must suffer "*material* adversity" because "it is important to separate significant from trivial harms."[27] That separation answers the questions posed by the dissenting opinion.

The dissent concludes that any further restrictions on at-will employment should be expressly imposed by the Legislature. I do not disagree that the Legislature could address the issue or that it is the function of the Legislature through the enactment of statutes to declare what is the law and public policy of this state.[28] The Legislature could resolve any lingering doubts about the scope of protection afforded to workers' compensation

---

[22] *Riesen, supra* note 10, 272 Neb. at 49, 717 N.W.2d at 915.

[23] *Galabya, supra* note 16.

[24] See *id.* See, generally, *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998).

[25] *Burlington N. & S. F. R. Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006), quoting *Rochon v. Gonzales*, 438 F.3d 1211 (D.C. Cir. 2006).

[26] See *id.*

[27] *Id.*, 548 U.S. at 68 (emphasis in original).

[28] See *In re Claims Against Atlanta Elev., Inc.*, 268 Neb. 598, 685 N.W.2d 477 (2004).

claimants by enacting an antiretaliation statute similar to those of other jurisdictions.

But it was the very point of *Jackson v. Morris Communications Corp.*[29] that the Legislature *has declared* the public policy of this state, by enacting the Nebraska Workers' Compensation Act. We recognized that the Legislature enacted the Nebraska Workers' Compensation Act to relieve injured workers from the adverse economic effects caused by a work-related injury or occupational disease and that important public purpose would be undermined by a rule which allowed fear of retaliation for the filing of a claim. Our holdings in this case and *Jackson* are equally based on the "clear mandate of public policy" that the Nebraska Workers' Compensation Act presents.[30] Our decision in *Jackson* met with the Legislature's acquiescence,[31] and there is no reason to believe that our application today of the same principle is any less a reflection of legislatively declared public policy.

If anything, the dissent would frustrate the Legislature's stated public policy by opening a loophole in *Jackson* that could quickly subsume its holding. The Nebraska Workers' Compensation Act would lose its meaning if the benefits it provides could be reclaimed by an employer's retaliatory action, even if that retaliation stops short of discharge. Because the majority's holding is a more workable rule, guided by ample precedent, and provides greater protection for clearly established public policy, I concur in the majority's decision.

McCORMACK and MILLER-LERMAN, JJ., join in this concurrence.

---

[29] *Jackson, supra* note 1.

[30] See *id.*, 265 Neb. at 432, 657 N.W.2d at 641.

[31] See *Dawes v. Wittrock Sandblasting & Painting*, 266 Neb. 526, 667 N.W.2d 167 (2003), *disapproved on other grounds, Kimminau v. Uribe Refuse Serv.*, 270 Neb. 682, 707 N.W.2d 229 (2005).

STEPHAN, J., dissenting.

*Jackson v. Morris Communications Corp.*[1] was correctly decided within the structure of our long-established common law pertaining to at-will employment. Because today's decision significantly expands that structure, I respectfully dissent.

The general principle that an employer may discharge an at-will employee at any time with or without reason, so long as the discharge is not constitutionally, statutorily, or contractually prohibited, recognizes the right of the employer to determine the makeup of its workforce without judicial oversight. Just as an at-will employee is free to leave an employment relationship without recourse by the employer, so is the employer free to terminate the relationship, so long as it does not act unlawfully or in breach of a contract. This rule applies even where the result may seem harsh to an outside observer.[2] The public policy exception to this rule holds that an at-will employee " 'may claim damages for wrongful discharge when the motivation for the firing contravenes public policy.' "[3] The exception has been narrowly applied in discharge cases, based upon our recognition that

> courts must use care in creating new public policy and that " 'recognition of an otherwise undeclared public policy as a basis for a judicial decision involves the application of a very nebulous concept to the facts of a given case, and that declaration of public policy is normally the function of the legislative branch.' "[4]

---

[1] *Jackson v. Morris Communications Corp.*, 265 Neb. 423, 657 N.W.2d 634 (2003).

[2] See, *Goff-Hamel v. Obstetricians & Gyns., P.C.*, 256 Neb. 19, 588 N.W.2d 798 (1999) (Stephan, J., dissenting); *Hamersky v. Nicholson Supply Co.*, 246 Neb. 156, 517 N.W.2d 382 (1994).

[3] *Ambroz v. Cornhusker Square Ltd.*, 226 Neb. 899, 902, 416 N.W.2d 510, 513 (1987), quoting *Mau v. Omaha Nat. Bank*, 207 Neb. 308, 299 N.W.2d 147 (1980).

[4] *Schriner v. Meginnis Ford Co.*, 228 Neb. 85, 91, 421 N.W.2d 755, 759 (1988), quoting *Adler v. American Standard Corp.*, 830 F.2d 1303 (4th Cir. 1987).

In *Malone v. American Bus. Info.*,[5] we declined to apply the public policy exception to a claim that an employee was discharged for exercising rights under the Nebraska Wage Payment and Collection Act, reasoning that the act did not declare " 'an important public policy with such clarity as to provide a basis for a civil action for wrongful discharge.' " But in *Jackson*, after conducting a detailed analysis of the policy considerations underlying the Nebraska Workers' Compensation Act, we held that the public policy exception permitted "an action for retaliatory discharge when an employee has been discharged for filing a workers' compensation claim."[6]

If an employer's decision to discharge an at-will employee is exempt from judicial oversight except in the limited circumstance where the public policy exception applies, it logically follows that decisions affecting the terms and conditions of an at-will employment relationship which do not terminate the relationship should be entitled to an even greater degree of deference. Until today, we have never imposed common-law restrictions upon an employer's right to make such decisions. The majority has done so in this case by transforming a narrow exception to the rule of nonliability for discharge into a new theory of liability for retaliatory demotion. In my opinion, recognition of this new cause of action is unwise. While I would be willing to extend the holding in *Jackson* to circumstances constituting a constructive discharge, which is not alleged in this case, I would go no further.

I do not condone any form of retaliation against an employee who files a workers' compensation claim. But the reality is that a job-related injury may bring about legitimate changes in an employment relationship. A workers' compensation claimant may be temporarily or permanently prevented from performing job requirements by the physical effects of the injury. Will a transfer to a different position, perhaps at a reduced wage, in order to accommodate the worker's diminished physical

---

[5] *Malone v. American Bus. Info.*, 262 Neb. 733, 740, 634 N.W.2d 788, 793 (2001), quoting *Schriner v. Meginnis Ford Co., supra* note 4.

[6] *Jackson v. Morris Communications Corp., supra* note 1, 265 Neb. at 432, 657 N.W.2d at 641.

abilities, now be deemed a retaliatory demotion? An employee who has filed a workers' compensation claim is subject to the employer's work rules to the same extent as other employees. Will routine disciplinary actions involving workers' compensation claimants now be the basis for a retaliation lawsuit? If there is a restructuring necessitated by changing business conditions, will the employer be required to exempt workers' compensation claimants from any changes in hours or job status in order to avoid a retaliation claim? Will an employer be prevented from taking measures to address the unsatisfactory job performance of an employee who has a pending workers' compensation claim?

The concurring opinion suggests that to resolve these concerns, we can simply apply the *"McDonnell Douglas*[7] burden-shifting analysis familiar from discrimination cases." Even if application of this analysis would be a workable solution, the fact is that the analysis was developed and is used by courts to adjudicate express *statutory* prohibitions of various forms of workplace discrimination. We simply are not presented with such a prohibition here. Instead, the majority holds for the first time in Nebraska that an implicit declaration of public policy can serve as the basis of an employment discrimination claim in a nondischarge situation. All of the cases cited in the concurring opinion as utilizing *McDonnell Douglas* "to resolve similar claims of adverse employment actions" involved express *statutory* causes of action. Federal and state employment discrimination statutes include defined terms, jurisdictional requirements, specific statements of prohibited conduct and available defenses, and enforcement mechanisms.[8] No such detailed guidance is provided with respect to the new common-law cause of action which the court recognizes today, and there is no assurance that it will be construed in the future in the manner predicted in the concurring opinion.

---

[7] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

[8] See, e.g., 42 U.S.C. §§ 2000e, 2000e-2, 2000e-3, and 2000e-5 (2000); Neb. Rev. Stat. §§ 48-1104, 48-1108, 48-1111, and 48-1118 (Reissue 2004).

It is true that in *Riesen v. Irwin Indus. Tool Co.*,[9] we applied the *McDonnell Douglas* burden-shifting analysis to the established common-law cause of action for wrongful discharge under the public policy exception to the doctrine of employment at will. The analysis was appropriate in part because wrongful discharge is actionable both under employment discrimination statutes and, in more limited circumstances, at common law. But until today, there has been no common-law cause of action which would impose civil liability for an employer's action which does not result in termination of the employment relationship. Unlike the circumstance of wrongful discharge, an employer will have no means of knowing in advance what specific conduct is proscribed under the new common-law cause of action which today's majority opinion creates. To say that we will use *McDonnell Douglas* to figure it all out simply ignores the fundamental difference between recognizing a wrongful discharge claim based on an implicit legislative articulation of public policy and recognizing an entirely new cause of action arising from the same source.

As the majority notes, two other courts have specifically declined to recognize a new cause of action for retaliatory demotion within an at-will employment relationship. These cases generally reason that retaliatory demotion or discrimination does not implicate a clear and substantial public policy to the same extent as a discharge and that creating a new cause of action would "encourage myriad claims against employers."[10] I agree with the reasoning of these courts, especially to the extent that they find that an implicit articulation of public policy is an insufficient basis on which to predicate the judicial recognition of a new, common-law cause of action.

Instead, if there are to be restrictions upon an employer's freedom to make decisions concerning the terms and conditions of on-going at-will employment, it is my view that they

---

[9] *Riesen v. Irwin Indus. Tool Co.*, 272 Neb. 41, 717 N.W.2d 907 (2006).

[10] See *Touchard v. La-Z-Boy Inc.*, 148 P.3d 945, 955 (Utah 2006). See, also, *Zimmerman v. Buchheit of Sparta, Inc.*, 164 Ill. 2d 29, 645 N.E.2d 877, 206 Ill. Dec. 625 (1994).

should be expressly imposed by the Nebraska Legislature.[11] The Legislature has enacted statutes prohibiting retaliation or discrimination based upon an employee's exercise of certain statutory rights.[12] In my opinion, it should be left to the Legislature to decide whether or to what extent the public policy considerations underlying the Nebraska Workers' Compensation Act require or warrant regulation of the terms and conditions of an existing at-will employment relationship.

For these reasons, I would affirm the judgment of the district court.

HEAVICAN, C.J., joins in this dissent.

---

[11] See, e.g., Conn. Gen. Stat. Ann. § 31-290a (West 2003) (prohibiting discharge or discrimination against employee who files workers' compensation claim and prescribing nature and scope of remedy); Mo. Ann. Stat. § 287.780 (West 2005) (prohibiting discharge or discrimination against employee for exercising rights under workers' compensation law, enforceable by civil action for damages); N.C. Gen. Stat. § 95-241 (2005) (prohibiting discrimination or any retaliatory action against employee who exercises statutory rights and establishing defense to such claims where employer can show it would have taken same action in absence of protected activity of employee).

[12] See Neb. Rev. Stat. §§ 48-1004 (Reissue 2004) (prohibiting discrimination based upon assertion of rights under statute prohibiting age discrimination in employment) and 48-1114 (Reissue 2004) (prohibiting discrimination based upon exercise of rights under Fair Employment Practice Act).