the Counsel for Discipline, demonstrating that respondent is adhering to the foregoing terms of probation. The quarterly report shall include a certification by the monitor that the monitor has reviewed the report and that respondent continues to abide by the terms of the probation.

## CONCLUSION

We find that respondent should be and hereby is suspended from the practice of law for a period of 3 years. Should respondent apply for reinstatement, his reinstatement shall be conditioned upon respondent's being on probation for a period of 2 years, including monitoring following reinstatement, subject to the terms of probation outlined above. Respondent is also directed to pay costs and expenses in accordance with Neb. Rev. Stat. §§ 7-114 and 7-115 (Reissue 2012) and Neb. Ct. R. §§ 3-310(P) (rev. 2014) and 3-323 within 60 days after an order imposing costs and expenses, if any, is entered by this court.

JUDGMENT OF SUSPENSION.

---

William D. Coffey, appellant, v.
Planet Group, Inc., appellee.
___ N.W.2d ___

Filed April 4, 2014.    No. S-13-194.

1. **Summary Judgment: Appeal and Error.** In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence.

2. ____: ____. An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.

3. **Statutes: Judgments: Appeal and Error.** The interpretation of statutes and regulations presents questions of law. An appellate court independently reviews questions of law decided by a lower court.

4. **Statutes: Appeal and Error.** Absent a statutory indication to the contrary, an appellate court gives words in a statute their ordinary meaning.

5. **Statutes: Legislature: Intent: Appeal and Error.** An appellate court will not look beyond a statute to determine the legislative intent when the words are plain, direct, or unambiguous.

6. **Contracts: Wages.** Neb. Rev. Stat. § 48-1229(4) (Reissue 2010) allows an employer and employee to contractually agree to define when a commission becomes earned as a wage.

7. **Contracts.** When the terms of a contract are clear, a court may not resort to rules of construction, and the terms are to be accorded their plain and ordinary meaning as an ordinary or reasonable person would understand them.

8. **Contracts: Parties.** The implied covenant of good faith and fair dealing exists in every contract and requires that none of the parties to the contract do anything which will injure the right of another party to receive the benefit of the contract.

9. ____: ____. The nature and extent of an implied covenant of good faith and fair dealing are measured in a particular contract by the justifiable expectations of the parties. Where one party acts arbitrarily, capriciously, or unreasonably, that conduct exceeds the justifiable expectations of the second party.

10. ____: ____. A violation of the covenant of good faith and fair dealing occurs only when a party violates, nullifies, or significantly impairs any benefit of the contract.

11. **Contracts.** The scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract.

12. **Termination of Employment.** Unless constitutionally, statutorily, or contractually prohibited, an employer, without incurring liability, may terminate an at-will employee at any time with or without reason.

13. **Termination of Employment: Public Policy: Damages.** Under the public policy exception to the at-will employment doctrine, an employee can claim damages for wrongful discharge when the motivation for the firing contravenes public policy.

14. **Termination of Employment: Public Policy.** The public policy exception to the at-will employment doctrine is restricted to cases when a clear mandate of public policy has been violated, and it should be limited to manageable and clear standards.

15. ____: ____. In determining whether a clear mandate of public policy is violated, courts should inquire whether the employer's conduct contravenes the letter or purpose of a constitutional, statutory, or regulatory provision or scheme.

16. **Termination of Employment: Wages: Public Policy.** The Nebraska Wage Payment and Collection Act, Neb. Rev. Stat. §§ 48-1228 to 48-1232 (Reissue 2010), does not represent a very clear mandate of public policy which would warrant recognition of an exception to the employment-at-will doctrine.

Appeal from the District Court for Douglas County: SHELLY R. STRATMAN, Judge. Affirmed.

Theodore R. Boecker, Jr., of Boecker Law, P.C., L.L.O., for appellant.

Julie Schultz Self, Heather Voegele-Andersen, and Kristin M.V. Farwell, of Koley Jessen, P.C., L.L.O., for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, STEPHAN, McCORMACK, and CASSEL, JJ.

McCORMACK, J.

## NATURE OF CASE

William D. Coffey seeks commissions for two projects that he worked on that were ongoing at the time of his termination as a salesperson from Planet Group, Inc. Planet Group argues that under the 2008 Sales Compensation Plan (Compensation Plan) signed by Coffey, commissions are earned only when the sales contract is signed during employment. The prominent issue presented by this appeal is whether the Compensation Plan is void under Neb. Rev. Stat. § 48-1229(4) (Reissue 2010) of the Nebraska Wage Payment and Collection Act (Wage Act). We find that the 2007 legislative amendments to § 48-1229(4) allow an employer and employee to contractually define when a commission becomes payable. We affirm the district court's order granting partial summary judgment, because the commissions for the two projects are not payable to Coffey under the Compensation Plan.

## BACKGROUND

In 2007, Coffey was hired as a salesperson at Planet Group. His role was to bolster international sales and assist in selling "enterprise solutions" to prospective customers. As a part of his employment, Coffey signed the Compensation Plan. The plan set out the requirements for when a commission was earned and how it would be paid. In its relevant parts, it stated:

> Commission Payment:
>
> Commissions are paid at the end of the month following the month that contracts were approved, executed and received by Planet Group and down payments are received. . . .
>
> 75% of Commissions are paid upon signed contract, and the final 25% upon contract completion. . . . The

upfront commission portion is not fully "earned" until each contract is completed.

. . . .

Termination

A Participant who is terminated or resigns from employment with Planet Group the commission payments will cease. . . . Commissions are deemed "earned" when a contract has been signed by the customer and the down payment under the contract has been received.

On March 26, 2009, Coffey's employment was terminated by Planet Group as part of Planet Group's reduction in force. Coffey was terminated with over 20 other employees.

At the time of his termination, Coffey had four relevant projects he had been working on: (1) the "First Data, US, Recurring Payments project" (Recurring Billing Project); (2) the "First Data, Argentina, B-24 Services project" (Posnet Project); (3) the "TIVIT project" (TIVIT Project); and (4) the "Mexico SSP project" (Mexico SSP Project). According to Coffey's affidavit, these projects either were orally agreed to, had been given approval by the customer, or were in the process of obtaining formal approval. Coffey admits that the Compensation Plan applied to the Recurring Billing Project, the Posnet Project, and the Mexico SSP Project. The TIVIT Project, however, had its own compensation plan.

For the 2 days prior to his termination, Coffey had been in negotiations with representatives from "First Data" on the Recurring Billing Project. According to Coffey, he and the representatives agreed that the project would be completed in two phases. The first phase's contract was executed on March 26, 2009, and the charges were billed. The second phase's contract was deferred until after the completion of the first phase to address any issues that may have occurred during the first phase. Coffey received commission for the first phase, but Planet Group denied him commission for the second phase.

Coffey attested that for the Posnet Project, he had completed his role as a salesperson, and that he is owed a commission. Coffey argued that the only work to be completed was the execution of new work orders for the remaining

phases of the project, which were to be executed after the initial phase.

In his amended complaint, Coffey alleged that he was owed commissions on each of the four projects. He alleged that for each project, there were "orders on file." He further alleged that Planet Group terminated him in bad faith, which he claims was a breach of the implied covenant of good faith and fair dealing.

The district court partially sustained Planet Group's motion for summary judgment. It granted the motion for summary judgment on Coffey's bad faith claim, because it found that Planet Group had the right to terminate Coffey as an at-will employee and that there was no evidence to support the existence of a public policy violation.

The district court also granted summary judgment on the Recurring Billing Project, the Posnet Project, and the Mexico SSP Project. The district court found that the Compensation Plan required a signed contract prior to a commission's being paid. The district court found that all commissions had properly been paid on these three projects. It further found that the signed contract requirement did not contradict the Wage Act's definition of wages under § 48-1229(4).

After a jury trial on the TIVIT Project claim, Coffey was awarded $100,933 for commission owed to him. After trial, the district court denied Coffey's motion to alter or amend regarding the earlier order granting Planet Group's motion for summary judgment. Coffey now appeals.

## ASSIGNMENTS OF ERROR

Coffey assigns that the district court erred in (1) sustaining the motion for summary judgment as to the claim for payments on the Recurring Billing Project, (2) sustaining the motion for summary judgment as to additional payments owed on the Posnet Project, (3) sustaining the motion for summary judgment as to the claim of a breach of the implied covenant of good faith and fair dealing, (4) determining that there can be no claim for a breach of the covenant of good faith and fair dealing under Nebraska law, (5) defining "orders on file" as an executed contract rather than submitting

the issue to the jury, (6) partially sustaining the motion for summary judgment, and (7) denying the motion to alter or amend the judgment.

## STANDARD OF REVIEW

[1] In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence.[1]

[2] An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.[2]

[3] The interpretation of statutes and regulations presents questions of law.[3] We independently review questions of law decided by a lower court.[4]

## ANALYSIS

### Wage Act

The crux of Coffey's argument on appeal is that § 48-1229(4) of the Wage Act does not permit an employer and an employee to contractually define when a commission becomes payable as "wages." Coffey argues that, therefore, he is owed a commission for both the Recurring Billing Project and the Posnet Project, because both projects constitute "orders on file" as contemplated under § 48-1229(4).

We have previously stated that an employer and an employee cannot circumvent the statutory definition of wages through an employment agreement, because the Wage Act controlled the determination of what commissions were payable.[5] At the

---

[1] *Peterson v. Homesite Indemnity Co.*, ante p. 48, 840 N.W.2d 885 (2013).

[2] *Id.*

[3] *Carey v. City of Hastings*, ante p. 1, 840 N.W.2d 868 (2013).

[4] *Id.*

[5] *Moore v. Eggers Consulting Co.*, 252 Neb. 396, 562 N.W.2d 534 (1997).

time, the Wage Act required that a commission became payable if it was an order on file at the time of the employee's termination.[6] However, these holdings were based on a version of § 48-1229(4) not in effect today.

The Wage Act was modified in response to our decision in *Roseland v. Strategic Staff Mgmt.*[7] In *Roseland*, we held that under the language of § 48-1229(4) (Reissue 1998) of the Wage Act, vacation leave provided by an employer was a fringe benefit and a wage payable to an employee upon termination. In doing so, we found that the employment agreement's provision stating that the unused vacation leave was not payable upon separation was null and void because it contradicted the Wage Act. After *Roseland*, the Legislature amended § 48-1229(4) in 2007.[8] The new amended version states in full:

> Wages means compensation for labor or services rendered by an employee, including fringe benefits, when previously agreed to and conditions stipulated have been met by the employee, whether the amount is determined on a time, task, fee, commission, or other basis. Paid leave, other than earned but unused vacation leave, provided as a fringe benefit by the employer shall not be included in the wages due and payable at the time of separation, unless the employer and the employee or the employer and the collective-bargaining representative have specifically agreed otherwise. Unless the employer and employee have specifically agreed otherwise through a contract effective at the commencement of employment or at least ninety days prior to separation, whichever is later, wages includes commissions on all orders delivered and all orders on file with the employer at the time of separation of employment less any orders returned or canceled at the time suit is filed.[9]

---

[6] *Id.*

[7] *Roseland v. Strategic Staff Mgmt.*, 272 Neb. 434, 722 N.W.2d 499 (2006).

[8] See 2007 Neb. Laws, L.B. 255 (now codified at Neb. Rev. Stat. § 48-1229(4) (Reissue 2010)).

[9] § 48-1229(4) (Reissue 2010).

Not only did the Legislature add language to fringe benefits and unused vacation leave, but it also added a new clause preceding the sentence explaining when commissions become payable. This is our first opportunity to interpret the new amendments in terms of when a commission becomes payable.

[4,5] Our rules of statutory interpretation guide our analysis. Absent a statutory indication to the contrary, we give words in a statute their ordinary meaning.[10] We will not look beyond a statute to determine the legislative intent when the words are plain, direct, or unambiguous.[11] So, we first consider the plain language of the statute.

[6] We find that the plain meaning of "[u]nless the employer and employee have specifically agreed otherwise through a contract effective at the commencement of employment or at least ninety days prior to separation" is that an employer and employee can contractually agree to define when a commission becomes earned as a wage. This clause qualifies the definition of when a commission becomes payable. Thus, absent a contractual agreement stating the contrary, a commission is payable at the time of the employee's termination if the order is delivered or if the order is on file. However, the 2007 amendment to § 48-1229(4) now allows an employer and employee to contractually define when a commission becomes "wages" via provisions in a signed employment agreement. The district court did not err in determining the parties could contractually define when a commission becomes earned and payable under the Wage Act.

[7] We must now determine if Coffey and Planet Group contractually defined when a commission was earned. When the terms of a contract are clear, a court may not resort to rules of construction, and the terms are to be accorded their plain and ordinary meaning as an ordinary or reasonable person would understand them.[12] The Compensation Plan states:

---

[10] *Fisher v. PayFlex Systems USA*, 285 Neb. 808, 829 N.W.2d 703 (2013).

[11] *Id*.

[12] *RSUI Indemnity Co. v. Bacon*, 282 Neb. 436, 810 N.W.2d 666 (2011).

"A Participant who is terminated or resigns from employment with Planet Group the commission payments will cease. . . . Commissions are deemed 'earned' when a contract has been signed by the customer and the down payment under the contract has been received." The Compensation Plan, signed by Coffey more than 90 days prior to his termination, requires that Coffey be employed when the contract is signed and when the downpayment is received to earn his commission. Therefore, we find that the district court did not err in determining that a commission was earned by Coffey only if there was a signed contract and a downpayment had been received for such contract. We must now determine whether the evidence, viewed in the light most favorable to Coffey, established that there are no genuine issues of material fact that there was not a signed contract for either the Recurring Billing Project or the Posnet Project.

We find that Coffey has been paid all earned commissions for the Recurring Billing Project. The evidence presented establishes that the Recurring Billing Project was to be completed in two phases: a requirements-analysis phase and a second phase which involved the purchase of the software system for the recurring billing contract. The second contract, for which Coffey now seeks a commission, was not entered into at the time he was terminated. Coffey has conceded so in his brief. Coffey's supervisor at Planet Group, whose deposition testimony was offered by Coffey, testified that the second contract was not signed until August 2009, after Coffey was terminated. Additionally, it is also clear from the "Requirements Analysis" contract that the second contract was a separate and distinct contract, not yet entered into. The "Requirements Analysis" contract contains language referencing "a proposed, larger project" that could be entered into if the "[c]ustomer moves forward with the purchase of the software system."

Likewise, the evidence viewed in a light most favorable to Coffey establishes that Coffey has been paid all commissions for each Posnet Project contract signed during his employment. Coffey admits that he has been paid for all Posnet Project contracts signed during his employment. In

his appellate brief, Coffey has conceded that additional payments for the Posnet Project were made only after a "[c]hange [o]rder" had been signed on June 4, 2009. Coffey conceded that the change order extended the project end date and discussed additional payments to be made. Coffey also conceded that the revenue, from which he seeks a commission, was secured by Planet Group through change orders signed after his termination. From this evidence, there are no genuine issues of material fact that the commission Coffey now seeks for the Posnet Project was from a contract signed after his termination.

We find that there are no genuine issues of material fact that Coffey was no longer employed with Planet Group when the additional Recurring Billing Project and Posnet Project contracts were signed. Therefore, we affirm the grant of partial summary judgment in favor of Planet Group on the commissions arising from the Posnet Project.

### Good Faith and Fair Dealing

Coffey argues that the district court erred in concluding that there is no claim for breach of good faith because employees are terminable at will under Nebraska law. He argues that an employee can be terminated on an at-will basis and still have a good faith and fair dealing claim if the employer wrongfully acts to defeat the employee's reasonable expectations. We disagree.

[8-11] The implied covenant of good faith and fair dealing exists in every contract and requires that none of the parties to the contract do anything which will injure the right of another party to receive the benefit of the contract.[13] The nature and extent of an implied covenant of good faith and fair dealing are measured in a particular contract by the justifiable expectations of the parties.[14] Where one party acts arbitrarily, capriciously, or unreasonably, that conduct exceeds the justifiable expectations of the second party.[15] A violation of the covenant

---

[13] *Id.*

[14] *Id.*

[15] *Id.*

of good faith and fair dealing occurs only when a party violates, nullifies, or significantly impairs any benefit of the contract.[16] The scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract.[17]

Here, the contract between Coffey and Planet Group was the Compensation Plan signed by both parties as part of Coffey's employment. In his amended complaint, Coffey alleged that Planet Group terminated his employment in bad faith to avoid paying Coffey additional commissions under the Wage Act.

[12-15] Unless constitutionally, statutorily, or contractually prohibited, an employer, without incurring liability, may terminate an at-will employee at any time with or without reason.[18] We recognize, however, a public policy exception to the at-will employment doctrine.[19] Under the public policy exception, an employee can claim damages for wrongful discharge when the motivation for the firing contravenes public policy.[20] The public policy exception is restricted to cases when a clear mandate of public policy has been violated, and it should be limited to manageable and clear standards.[21] In determining whether a clear mandate of public policy is violated, courts should inquire whether the employer's conduct contravenes the letter or purpose of a constitutional, statutory, or regulatory provision or scheme.[22]

[16] We have previously determined that the Wage Act did not "'represent a "very clear mandate of public policy" which would warrant recognition of an exception to the employment-at-will doctrine.'"[23] The Wage Act does not prohibit employers from discharging employees, and it does not provide

---

[16] *Id.*

[17] *Spanish Oaks v. Hy-Vee*, 265 Neb. 133, 655 N.W.2d 390 (2003).

[18] *Trosper v. Bag 'N Save*, 273 Neb. 855, 734 N.W.2d 704 (2007).

[19] *Id.*

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] *Id.* at 858, 734 N.W.2d at 707.

employees with any substantive rights.[24] Thus, while the Wage Act provides Coffey with a remedy to collect any compensation which Planet Group may owe him, it does not "declare '"an important public policy with such clarity as to provide a basis for a civil action for wrongful discharge."'"[25]

Additionally, we find Planet Group did not act in bad faith in denying the commissions to Coffey under the Compensation Plan. A violation of the covenant of good faith and fair dealing occurs only when a party violates, nullifies, or significantly impairs any benefit of the contract.[26] We have already established that under the clear and unambiguous terms of the Compensation Plan, a commission can be earned only if the contract is signed while the employee is employed with the company. Under the Compensation Plan, Planet Group has upheld its requirements and has paid Coffey the proper benefits of the contract.

We conclude, as a matter of law, that Coffey cannot raise a bad faith claim based on his termination as an at-will employee with Planet Group, because there is no evidence of a public policy violation. Coffey's only avenue for recovery in this case was his breach of contract claims he raised in relation to the four projects. Therefore, the district court did not err in determining that Planet Group had the right to terminate Coffey's employment and in determining as a matter of law that Planet Group could not have acted in bad faith in doing so.

## CONCLUSION

For the reasons stated herein, we affirm the judgment of the district court.

AFFIRMED.

MILLER-LERMAN, J., not participating.

---

[24] *Id.*

[25] *Id.* at 874, 734 N.W.2d at 717 (Stephan, J., dissenting).

[26] *RSUI Indemnity Co. v. Bacon, supra* note 12.